OPINION OF THE COURT
 

 Fuchsberg, J.
 

 In a matter of first impression in this court, we are called upon to decide whether, pursuant to section 25 (subd 4, par [a]) of the Workers’ Compensation Law, an employer who has paid full wages to its employee during a period of disability may obtain full reimbursement of these payments out of a “schedule award” for a different though consequential injury. The question arises in a case in which the employee injured his back in the course of his employment and, some nine months later, suffered an injury to his hand when a recurrence of back pain attributable to the original injury led to the separate, non-work-related accident.
 

 Claimant, Donald Landgrebe, a Westchester County correction officer, injured his back when he slipped on a wet floor in the county jail on March 9, 1977. The county, pursuant to its practice, continued to pay him full wages for the ensuing periods of disability until he fully returned to work as of June 30, 1977. As permitted by section 25 (subd 4, par [a]), the county, in order to advise its carrier that payment of compensation had commenced and that all payments were being made as advances, then filed a “request for reimbursement” form for the amount it had so expended, $3,383.07. Section 25, in relevant part provides: “If the employer has made advance payments of compensation, or has made payments to an employee in like manner as wages during any period of disability, he shall be entitled to be reimbursed out of an unpaid instalment or instalments of compensation due”.
 

 Causal connection between the accident and the back injury having been established, in due course the Workers’
 
 *5
 
 Compensation Board fixed the claimant’s award at what was then the maximum weekly total disability rate of $125. Since this was less than the sum advanced by the county by way of the full wages it had continued to pay during the period of disability, the board directed the carrier to pay the full amount of the weekly disability payments, $1,775, to the county. This meant, of course, that $1,608.07 ($3,383.07 minus $1,775) went unreimbursed.
 

 One day during the next winter, after the claimant had been working uneventfully for many months, his leg gave way when he suffered a sudden recurrence of back pain while he was operating a snowblower away from work. As a result, he sustained partial amputation of two fingers when these were caught in the blower.
 
 [1]
 
 During the relatively short time that his new injury kept him away from work, the county again routinely paid his full wages, this time amounting to but $547.07. After a hearing, the workers’ compensation referee
 
 [2]
 
 found that the snowblower incident was consequential to the prior work-related accident and that, because the claimant had sustained a permanent loss of use of his fingers, he was entitled to $4,422.50 by way of a “schedule award”. Such awards are payable for specified permanent partial disabilities under subdivision 3 of section 15 of the Workers’ Compensation Law.
 

 Before entering on our analysis, to avoid any confusion of concepts, some definition of terms may be in order. To this end, we first note that the Workers’ Compensation Law establishes four classifications of disability for which compensation may be rendered: (1) permanent total disability, (2) temporary total disability, (3) permanent partial disability, and (4) temporary partial disability. Moreover, subdivision 6 of section 2 of the Workers’ Compensation Law broadly defines “compensation” as “the money
 
 *6
 
 allowance payable to an employee or to his dependents as provided for in this chapter”, while section 15 provides a “schedule of compensation” to be used in computing an “allowance” (or, in more common parlance, “an award”) under all four classifications. If we were to take these provisions at face value, then, it would seem that all awards for disability
 
 [3]
 
 constitute “schedule” awards.
 

 Nevertheless, “schedule award” has evolved as a much narrower phrase of art encompassing compensation allowed for specified permanent partial disabilities in which the loss or the loss of use of a member of the body listed in subdivision 3 of section 15 has occurred (see 66 NY Jur, Workmen’s Compensation, § 773). It goes without saying that this dichotomy between the statutory and the long-accepted nonstatutory uses of the term “schedule award” does not aid in interpreting a statute which, on the matter at hand, has no revealing statutory history.
 

 This also appears to be an appropriate place at which to state the uncontroverted fact that the amount of a “schedule award”, in the loss-of-use-of-a-member sense, though independent of the time an employee actually loses from work, is fixed at a statutorily prescribed number of weeks of compensation. Multiplication of the weekly rate applicable to the employee by the number of weeks the schedule specifies for the particular loss then becomes the means by which the amount of a “schedule award” is computed. In particular “[t]he payment is not analogous to the payment of weekly compensation for temporary disablity”
 
 (Matter of Lynch v Board of Educ.,
 
 1 AD2d 362, 365, affd 3 NY2d 871). Indeed, when an employee who is entitled to a schedule award has received any disability payments for temporary total disability produced by his injuries, these are chargeable to the schedule award (Workers’ Compensation Law, § 15, subd 4-a).
 

 In contrast, an award for any other type of disability, whether termed a “disability award”,
 
 [4]
 
 an “award of weekly
 
 *7
 
 compensation”,
 
 [5]
 
 or a “nonschedule award”
 
 [6]
 
 is based on the actual period during which an employee is “disabled from earning full wages at the work at which the employee was last employed” (Workers’ Compensation Law, § 37, subd 1). In the case of “temporary total disability” (here the back injury was so treated), a specified percent (presently 66%) of the employee’s average weekly wages is payable “during the continuance thereof”, subject to a statutory maximum rate of compensation (§ 15, subds 2, 6).
 

 Now, the claimant did not dispute the county’s right to look to the fund created by the “schedule award” for reimbursement of the $547.07 which the county had advanced subsequent to the hand injury. But the county, relying on what it asserts are the implications of
 
 Matter of Ott v Green-Wood Cemetery
 
 (262 NY 532), insisted that it also was entitled to have recourse to this fund for the balance of $1,608.07 of the wages it had paid the claimant for the time he lost from work because of his on-the-job injury. Reading the self-same
 
 Matter of Ott
 
 as compelling no such conclusion, the claimant contended that “reimbursement should not be allowed where wages were clearly never paid for a disability attendant to the schedulable injury”. This became the nub of their controversy.
 

 On this record, the referee adopted the county’s position and directed the carrier to reimburse the county from the “schedule award” in full. Upon administrative appeal, however, the Workers’ Compensation Board modified the decision to allow reimbursement from the “schedule award” only for payments advanced after the date of the hand injury. The Appellate Division having reversed and remitted to the board for further proceedings (84 AD2d 598), the board now appeals as a matter of right (CPLR 5601, subd [a]). For the reasons which follow, we believe the board’s order should be reinstated.
 

 Since section 25 (subd 4, par [a]) of the Workers’ Compensation Law itself does not speak to the precise problem confronting us, and, as noted earlier, the point at stake enjoys no legislative history, maxims of statutory construction are of limited utility (Frankfurter, Some Reflections
 
 *8
 
 on the Reading of Statutes, 47 Col L Rev 527, 544-545; Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand L Rev 395, 401-406).
 

 Nevertheless the setting in which this section came into being is not to be overlooked (cf.
 
 Sharapata v Town of Islip,
 
 56 NY2d 332, 336). For one thing, it is part of a remedial statutory scheme of which an important object is furtherance of the welfare of injured workers (see
 
 Matter of Merchant v Pinkerton’s Inc.,
 
 50 NY2d 492, 495;
 
 Matter of Husted v Seneca Steel Serv.,
 
 41 NY2d 140, 145). On the other hand, the greater certainty so provided for compensating victims of industrial accidents is not at the neglect of the interests of employers, since “[t]he price for these secure benefits is the loss of the common-law tort action in which greater benefits might be obtained” from the employer
 
 (O’Rourke v Long,
 
 41 NY2d 219, 222).
 

 In short, our compensation system is not a one-way street. And the general plan of the section before us now obviously is in this spirit. For, it compels neither “advance payments of compensation” nor “payments to an employee in like manner as wages during any period of disability”. Yet, so as not to discourage an employer from undertaking to make these, it provides a protected source of repayment.
 

 To be sure,
 
 Matter of Ott v Green-Wood Cemetery
 
 (262 NY 532, affg without opn 237 App Div 860, supra) and the line of decisional law of which it is the forebear shed some light on how far the section’s promise of repayment goes. However,
 
 Ott,
 
 in which there was no appreciable judicial writing at either appellate level, hardly provides the answer the employer here would like. Rather, as the record there reveals,
 
 Ott,
 
 unlike the present case, involved but a single industrial episode. Following an accident to his hand for which the claimant suffered total disability for 19 1/6 weeks, he received a schedule award for 50% of the loss of use of this member. There was no intervening, consequential or other injury or event, work or nonwork related. As would be normal, while the full wages the employer had continued to pay during the disability period exceeded the fractional weekly compensation rate, it was less than the
 
 *9
 
 schedule award from which reimbursement of the employer’s advance was ordered.
 

 Since then an employer’s right to reimbursement of any unreimbursed balance of “payments * * * in like manner as wages” has come to depend on whether a schedule award was or was not made. Obviously, if a disability award is rendered for the period of total disability alone, either an employer who has advanced only the payments of weekly compensation (in which event it will have advanced precisely the compensation amounts due the employee) or an employer who has made “payments * * * in like manner as wages” (in which event it will have advanced more than the amount due the employee) will be reimbursed to the full extent of the employee’s weekly compensation payments, but no more. If, however, an employee has received a “schedule award”, an employer who has made “payments * * * in like manner as wages” can look to the total “schedule award” (which,
 
 en gros,
 
 would include any weekly total disability payments "charged against it as aforesaid) as a resource to be applied toward full reimbursement of the employer. But, once again, it is to be emphasized that the cases in which this rule has been applied, in this court most recently in
 
 Matter of Adolf v City of Buffalo Bd. of Educ.
 
 (50 NY2d 871, affg 71 AD2d 746,
 
 supra),
 
 like
 
 Ott,
 
 are all single incident cases (see, e.g.,
 
 Matter of Lynch v Board of Educ.,
 
 1 AD2d 362, affd 3 NY2d 871,
 
 supra; Matter of Ulman v Jerome Glass & Shade Co.,
 
 266 App Div 643; see, also,
 
 Matter of Manley v Board of Coop. Educational Servs. for Broome County,
 
 66 AD2d 943).
 

 It seems to us that, for the single incident cases, there is no reason to depart from these adjudications. It is reasonable to assume that moneys advanced by employers in such cases were intended to help tide the employee over the expected consequences of the injury. But, it is also to be assumed that, to the extent that the employee is entitled to an award for the compensation so advanced, absent any arrangement to the contrary, it is to be reimbursed to his employer. Unless this is done, whether out of weekly total disability payments or out of a more comprehensive schedule award, the employee will have benefited from a dupli
 
 *10
 
 cation of payments which very well may give him more than would his normal salary. There are, of course, employers who would so intend, but this is not to be assumed as a matter of course. Indeed, not too long ago, in related circumstances involving a single incident, we acted on the proposition that the norm is the avoidance of overlapping recoveries (see
 
 Matter of Jefferson v Bronx Psychiatric Center,
 
 55 NY2d 69).
 

 Much different from the frame of reference in a single incident case is that in which a second incident case must be examined. To begin with, the language of section 25 (subd 4, par [a]) of the Workers’ Compensation Law favors matching a reimbursement and an award when a particular event brought both about. Thus, it is possible to put meaning in the fact that the statutory phrase “during any period of disability” is in the singular and that “advance payment” and “unpaid instalment” connote an advance against a claim for the reality of an existing incident rather than the speculation of one yet
 
 in futuro.
 

 In the context of this case, more telling is the nature of the hand-related “schedule award” which the employer would target for reimbursement of the wage differential it laid out because of the distinctly different nonschedule first incident injury.
 

 The “schedule award”, as we have seen, in essence, was replacement for the partial loss of a hand; in fact, in the context of such a serious condition, the wage loss here, only for two weeks, was insignificant. The “schedule award” then has to be seen as an award for a dignitary loss or as a cushion against a future earning capacity at a time when the security and continuity of an ongoing employment may be gone. True, strictly speaking, this could be argued in a “schedule award” single incident case as well, but there we would be dealing with a direct situation in which a “schedule award” represented no more than recognition of a more lasting outcome of the very trauma which prompted the advance, instead, as here, of a completely uncontemplated future event.
 

 There are also policy considerations that would dictate denial of the employer’s pursuit of the avails of the second event. For example, though the two incidents are not
 
 *11
 
 completely unconnected because of a finding of consequentially, this need not determine the issue of reimbursability presented here. The hand injury, even if consequential to the prior back injury, constituted a distinct physical occurrence and impairment. It was not merely an aggravation or complication of the back injury, but a new and physiologically different one. The two were unrelated temporally and medically.
 

 Nor do courts appreciate arrangements in compensation cases which would in effect convert an unreimbursable portion of a past advance into a lien against funds which may likely be needed by an insured worker during times of future and largely unconnected disability (cf.
 
 Matter of Lynch v Board of Educ.,
 
 1 AD2d 362, 365,
 
 supra).
 

 For all these reasons, the order of the Appellate Division should be reversed, with costs, and the decision of the Workers’ Compensation Board should be reinstated.
 

 Chief Judge Cooke and Judges Jasen and Meyer concur with Judge Fuchsberg; Judges Gabrielli, Jones and Wachtler dissent and vote to affirm for reasons stated in the memorandum at the Appellate Division (84 AD2d 598).
 

 Order reversed, etc.
 

 [1]
 

 . On the basis of this incident, claimant’s compensation case, which otherwise was to be formally closed for lack of medical evidence of any further disability causally related to the original injury, subsequently was reopened (see Workers’ Compensation Law, § 123).
 

 [2]
 

 . The ultimate decision of the Workers’ Compensation Board in this case refers to the referee as “Workers’ Compensation Law Judge (Referee)”. However, while, therefore, both titles appear to be in vogue, we continue to use the statutory one (Workers’ Compensation Law, § 150).
 

 [3]
 

 . An exception exists for certain “non-schedule adjustments” specified in subdivision 5-b of section 15.
 

 [4]
 

 .
 
 (Matter of Wilkosz v Symington Gould Corp.,
 
 14 AD2d 408, affd 14 NY2d 739.)
 

 [5]
 

 .
 
 (Matter of Lynch v Board of Educ.,
 
 1 AD2d 362, affd 3 NY2d 871,
 
 supra.)
 

 [6]
 

 .
 
 (Matter of Adolf v City of Buffalo Bd. of Educ.,
 
 50 NY2d 871, 875.)