Hon. Carmine Perrotta Chairman State of New York Workers' Compensation Board
Your predecessor has asked whether the income execution and the income deduction order created by the 1985 Support Enforcement Act take priority over the other statutory deductions from a workers' compensation award.
In the past, awards made pursuant to the Workers' Compensation Law (WCL) have enjoyed certain exemptions. Prior to the Support Enforcement Act of 1985, section 33 of the WCL provided, in part, as follows:
 "Compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived . . ." (WCL, § 33).
The WCL allows certain releases or assignments of funds from the workers' compensation award. A deduction is allowed for disability insurers who paid disability benefits during the pendency of the workers' compensation claim. If a workers' compensation claim is contested on the ground that the employee's injury is not covered by workers' compensation, but by disability insurance, the WCL mandates that the disability insurer make payments during the pendency of the workers' compensation claim (WCL, § 206[2]). If the Workers' Compensation Board ultimately determines that the injury was covered by workers' compensation, the WCL allows the disability insurer to recoup the funds paid out during the pendency period from the workers' compensation award:
 "If benefits have been paid under this article in respect to a disability alleged to have arisen out of and in the course of the employment or by reason of an occupational disease, or in line of duty as a volunteer fireman, the employer or carrier or the chairman making such payment may, at any time before award of workmen's compensation benefits, or volunteer firemen's benefits, is made, file with the board a claim for reimbursement out of the proceeds of such award to the employee for the period for which disability benefits were paid to the employee under this article, and shall have a lien against the award for reimbursement, notwithstanding the provisions of section thirty-three of this chapter . . . " (WCL, § 206[2]).
Notably, this deduction and lien are made "notwithstanding the provisions of section thirty-three" of the WCL (ibid.). The deduction reimburses the disability insurer and serves to prevent the duplication of benefits received by the employee (Matter of Brett v Bethlehem Steel Corp.,55 A.D.2d 70 [3d Dept, 1976]; Matter of McHeffey v International Talc,Inc., 51 A.D.2d 213 [3d Dept, 1976]). If the deduction were not allowed, the employee would receive a windfall, inasmuch as he would recover from both the disability and workers' compensation insurance carriers for the same period in which he was unable to work.
Similarly, if an employer has made advance salary payments to an injured non-working employee (e.g., sick pay) for a period during which it is determined that the employee is entitled to workers' compensation, section 25 of the WCL allows the employer to recover these amounts from the workers' compensation award:
 "If the employer has made advance payments of compensation, or has made payments to an employee in like manner as wages during any period of disability, he shall be entitled to be reimbursed out of an unpaid instalment or instalments of compensation due, provided his claim for reimbursement is filed before award of compensation is made . . ." (WCL, § 25[4][a]; see Matter of Landgrebe v County of Westchester, 57 N.Y.2d 1 [1982]; Matter of Jefferson v Bronx Psychiatric Center, 55 N.Y.2d 69 [1982]; Matter of Adolf v City of Buffalo Board of Education, 50 N.Y.2d 871 [1980]).
Unlike the provision in WCL, § 206(2), governing recoupment of disability insurance benefits, section 25(4) does not make reference to WCL, § 33. Nor does section 25(4) give the employer a lien against the award in order to recover the advance payments.
Finally, attorneys or others who act as legal representatives before the Board, are entitled to a portion of the workers' compensation award as a fee. These fees are set and approved by the Board, and are to be paid "only in the manner fixed by the board" (WCL, § 24). If the attorney is granted a fee by the Board, "such claim or claims shall become a lien upon the compensation awarded" (ibid.). Traditionally, the legal representative's liens have enjoyed the highest priority, taking precedence over reimbursement under both sections 25 and 206(2) (Klag vDrug and Chemical Club, 305 N.Y. 900, revg 281 App. Div. 914 [3d Dept, 1953]; Matter of Dickman v City of New York, 25 A.D.2d 931, 932 [3d Dept], affd 18 N.Y.2d 969 [1966]).
Thus, disability insurers and employers making payments to an employee during the pendency of a workers' compensation claim must make claims with the Board for reimbursement out of the award. The amount of attorneys' fees, and their manner of payment are fixed by the Board. The Board in practice implements these statutory directives by determining the portion of the award payable to the disability insurer, the employer and the attorney. The workers' compensation insurance carrier then pays out these sums in accordance with the Board's instructions directly to the three claimants, with the balance of the award going to the injured employee (see State Mut. Life Assur. Co. of America v Walker, 24 A.D.2d 804
[3d Dept, 1965]). As a consequence of this process, the attorney is paid for his services and the disability insurer and the employer are reimbursed for payments ultimately determined to be the responsibility of the workers' compensation insurance carrier. Also, the process insures that the injured employee does not receive a double payment.
We turn now to the income execution and income deduction order created by the 1985 Support Enforcement Act (CPLR, §§ 5241, 5242; L 1985, ch 809), to see how they fit into the statutory network created by the Workers' Compensation Law. The Support Enforcement Act addressed the problem of nonpayment of support obligations; CPLR, §§ 5241 and 5242
were added in order to "strengthen income deduction as a support enforcement tool" (Executive Approval Memorandum, L 1985, ch 809, § 38). The collection provisions of the act are triggered when the party responsible for support defaults. Default occurs when the support payor fails to make three support payments, or when the accumulation of arrears equals or exceeds one month's worth of support (CPLR, § 5241[a][7]). Section 5241 provides a mechanism which allows the person entitled to support to execute, without court intervention, on the income of the support payor. "Income" is defined very broadly in the statute, and specifically includes "workers' compensation" (id., § 5241[a][6]). Section 5241(g) contains the operative language for the income execution:
 "An employer or income payor served with an execution shall commence deductions from income due or thereafter due to the debtor no later than the first pay period that occurs fourteen days after service of the execution . . ." (id., § 5241[g] [emphasis supplied]; see, also, § 5241[b]).
Section 5242 provides for court intervention, in the form of an income deduction order, in order to "correct any defect, irregularity, error or omission in an income execution for support enforcement issued pursuant to section 5241 . . ." (id., § 5242[a]).
Furthermore, subdivision b of section 5242 empowers the court to enter an income deduction order, independent of section 5241 and subdivision a of section 5242:
 "Upon application of a creditor, for good cause shown, the court may enter an income deduction order for support enforcement. In determining good cause, the court may take into consideration evidence of the degree of such debtor's past financial responsibility, credit references, credit history, and any other matter the court considers relevant in determining the likelihood of payment in accordance with the order of support" (CPLR, § 5242[b]).
The definition of "income" as used in this provision is the same as in section 5241, and, therefore, includes workers' compensation. Section 5242 is, however, considerably more sparse that its companion, section 5241, and provides little procedural guidance.
Chapter 809 of the Laws of 1985, which added the Support Enforcement Act to the CPLR, also amended section 33 of the Workers' Compensation Law, as follows:
 "Compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived provided, however, that compensation or benefits other than payments pursuant to section thirteen of this chapter shall be subject to application to an income execution or order for support enforcement pursuant to section fifty-two hundred forty-one or fifty-two hundred forty-two of the civil practice law and rules." (Underlined language added.)
Sections 5241 and 5242 of the CPLR provide that the income execution and the income deduction "take priority over any other assignment, levy or process" (id., §§ 5241[h], 5242[c]).
Turning to your question, you have asked whether the income execution and the income deduction order under sections 5241 and 5242 of the CPLR have priority over the claims made by disability benefit insurers, employers and attorneys on the workers' compensation award. Neither section 33 nor any other provisions of the Workers' Compensation Law clearly define the order of priority for the payment of these claims. The language of the Support Enforcement Act and the procedure established by the Workers' Compensation Law for payment of attorneys' fees and reimbursement of employers and disability insurance carriers determine that the latter claims should first be deducted from the award.
Section 5241 authorizes an income execution requiring that the employer "commence deductions from income due or thereafter due to the debtor" (id., § 5241[g]; see, also, § 5241[b]). While section 5242, which authorizes the income deduction order, is not as explicit, it uses the same definition of income and, together with section 5241, constitutes the Support Enforcement Act. Thus, it follows that the income deduction order in section 5242 also applies to income due to the debtor. In this opinion, we are addressing workers' compensation income due to the debtor, in this case the employee.
As described earlier, under the procedure established by the Workers' Compensation Law, the Board orders that the workers' compensation carrier directly make payments to the disability insurance carrier, the employer and to the attorney. The balance of the award is the workers' compensation payment to the employee. This payment to the employee is the "income" referred to in sections 5241 and 5242 of the CPLR. Under the Workers' Compensation Law, the other allocations from the workers' compensation award are payments for attorneys' fees and reimbursements ultimately determined to be the responsibility of the workers' compensation carrier.
These conclusions also produce the Legislature's longstanding goal to ensure reliable and prompt payment to injured workers. As indicated earlier, it is established that the attorneys' fees have traditionally enjoyed the highest priority (Stedman v City of New York, 107 A.D.2d 600,601-602 [1st Dept, 1985]; Matter of Dickman v City of New York, supra;Klag v Drug and Chemical Club, supra). Also, the Legislature intended to encourage the representation of claimants for workers' compensation. The disability payments and the payments by the employer during the pendency of the workers' compensation claim would, under the provisions of sections 5241 and 5242 of the CPLR, constitute "income" subject to income execution and an income deduction order. This is because the definition of "income" includes earned, unearned, taxable or non-taxable income and disability benefits (id., § 5241[a][6]). Thus, if the workers' compensation award, prior to reimbursement of the disability insurance carrier and the employer, was subject to the remedies of sections 5241 and 5242, the result might be that money payable for the same hours worked would be twice subject to support enforcement remedies. Further, disability insurers and employers might not receive full reimbursement. There is nothing in the Support Enforcement Act or in the Workers' Compensation Law to dictate such a curious result.
We conclude that the claims for attorneys' fees and reimbursement by disability insurance carriers and employers are deducted from the workers' compensation award and the support enforcement remedies of CPLR, §§ 5241 and 5242 apply to the workers' compensation benefits to be paid to the employee.