■ In the Matter of the Claim of JENNIFER SCALLY, Appellant, v RAVENA COEYMANS SELKIRK CENTRAL SCHOOL DISTRICT et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [819 NYS2d 137]—

Carpinello, J. Appeal from a decision of the Workers' Compensation Board, filed December 3, 2004, which ruled that claimant's workers' compensation award be apportioned 50% to a nonwork-related injury and 50% to a work-related injury.

In 1986, claimant sustained a nonwork-related injury to her left knee while performing gymnastics in high school. She subsequently underwent reconstructive surgery to address this injury in 1993. Claimant worked without disability or restrictions until February 12, 2002, when she slipped in her employer's cafeteria and reinjured her left knee. She thereafter applied for workers' compensation benefits. A Workers' Compensation Law Judge (hereinafter WCLJ) established the case for a left knee injury, but reserved on the issue of apportionment. Following hearings, the WCLJ found that apportionment of the award to the 1986 injury was not appropriate notwithstanding testimony from the employer's independent medical expert to

the effect that 50% of claimant's disability was attributable to the prior injury and 50% was attributable to the 2002 injury. Upon review, the Workers' Compensation Board reversed the WCLJ and directed that claimant's award be so apportioned. Claimant now appeals.

We begin with the general rule that "apportionment is not appropriate where the claimant's prior condition was not the result of a compensable injury and such claimant was fully employed and able to effectively perform his or her duties despite the noncompensable preexisting condition" (*Matter of Bruno v Kelly Temp Serv.*, 301 AD2d 730, 731 [2003]). The determinative issue in such cases is whether the claimant's prior condition "constitutes 'a disability in a compensation sense'" (*Matter of Krebs v Town of Ithaca*, 293 AD2d 883, 884 [2002], *lv denied* 100 NY2d 501 [2003], quoting *Matter of Carbonaro v Chinatown Sea Food*, 55 AD2d 756, 757 [1976]). Here, claimant relies on the general rule in arguing that the Board's determination is contrary to prevailing case law.

In reviewing claimant's claim, however, the Board did not consider it to be a "traditional apportionment case[ ]." Rather, the Board found that this case involved the narrow situation where the prior nonwork-related injury would have resulted in a schedule loss of use award had the injury occurred in a work environment (*see Trathen Logging Co., Inc.*, 2003 WL 21545736, 2003 NY Wrk Comp LEXIS 84158 [July 8, 2003]; *see also Erie County Med. Ctr.*, 2005 WL 1794456, 2005 NY Wrk Comp LEXIS 6297 [July 26, 2005]; *Best Fire*, 2004 WL 1045123, 2004 NY Wrk Comp LEXIS 10172 [May 4, 2004]; *Valeo*, 2004 WL 291836, 2004 NY Wrk Comp LEXIS 7407 [Feb. 9, 2004]). Since schedule loss of use awards are intended to compensate for the diminution in future earning capacity (*see e.g. Matter of Landgrebe v County of Westchester*, 57 NY2d 1, 10 [1982]), the Board reasoned that a nonwork-related injury which would have resulted in a schedule loss of use award, had it occurred in the work environment, is "a disability in a compensation sense sufficient to warrant a finding of apportionment." We defer to this interpretation of the Workers' Compensation Law by the Board since it is not irrational (*see generally Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

As to the dissent's argument that the Board never made a schedule loss of use award for the second work-related injury, it is clear from the record that the *only* issue presented for Board review was the dispute over apportionment of the medical expenses for the second surgery. Thus, it was never asked to make a schedule loss of use award. There can be no doubt, however,

that the Board found this case to be one which fell in the small subset of cases involving schedule loss of use awards. Indeed, the Board, in making its determination, noted that "in schedule loss of use cases [the question] is whether there is medical evidence of a pre-existing loss of use, range of motion or function of the body part in question which would have resulted in a schedule loss of use finding had the prior injury been compensable." In justifying its holding, the Board added the following observation: "[T]here exists a sound reason to employ this inquiry in schedule loss of use determinations. A carrier should not be made to pay any portion of a schedule loss of use award attributable to a pre-existing loss of range of motion."

Furthermore, this Court has never held as a matter of law that apportionment cannot be applied where the prior nonwork-related injury would have resulted in a schedule loss of use award had the injury been work related. In this regard, the precedent cited by the dissent (*see Matter of Edmondson v State Ins. Fund*, 162 AD2d 833, 834 [1990]; *Matter of Roselli v Middletown School Dist.*, 144 AD2d 223, 224 [1988]; *Matter of Zanetti v Orange & Rockland Util.*, 132 AD2d 761, 761-762 [1987]) simply involves the question of whether substantial evidence supported those determinations in the face of disputed medical testimony. Here, both the independent medical expert *and* claimant's own treating physician opined that there would have been a schedule loss of use award following the 1993 surgery had the prior injury been work related. Therefore, the Board's determination should be upheld under *Trathen Logging Co., Inc.* (*supra*) and its progeny.

Crew III, Spain and Lahtinen, JJ., concur.

Cardona, P.J. (dissenting). Over the past 30 years, this Court has consistently held that "apportionment is not appropriate where the claimant's prior condition was not the result of a compensable injury and such claimant was fully employed and able to effectively perform his or her duties despite the noncompensable preexisting condition" (*Matter of Bruno v Kelly Temp Serv.*, 301 AD2d 730, 731 [2003]; *accord Matter of Hargraves v Dormann Lib.*, 18 AD3d 1105, 1106 [2005]; *Matter of Hogan v Hilltop Manor of Niskayuna*, 303 AD2d 822, 823 [2003]; *Matter of Montana v Orion Bus Indus.*, 303 AD2d 820, 821 [2003]; *see e.g. Matter of Johnson v Feinberg-Smith Assoc.*, 305 AD2d 826, 827 [2003]; *Matter of Krebs v Town of Ithaca*, 293 AD2d 883, 883-884 [2002]; *Matter of Woods v Marriott Corp.*, 285 AD2d 906, 907 [2001]; *Matter of Ricci v Riegel & Sons*, 278 AD2d 673, 673-674 [2000]; *Matter of Edmondson v State Ins. Fund*, 162 AD2d 833, 834 [1990]; *Matter of Roselli v Middletown*

*School Dist.*, 144 AD2d 223, 224 [1988]; *Matter of Zanetti v Orange & Rockland Util.*, 132 AD2d 761, 761-762 [1987]; *Matter of Pollara v Air France*, 83 AD2d 701, 701-702 [1981]; *Matter of Carbonaro v Chinatown Sea Food*, 55 AD2d 756, 757 [1976]). Significantly, we have previously applied this rule in cases involving schedule loss of use awards—i.e., awards for the future loss of earning capacity arising from the loss or impairment of a particular body member (*see* Workers' Compensation Law § 15 [3]; *see e.g. Matter of Edmondson v State Ins. Fund, supra*; *see also Matter of Roselli v Middletown School Dist., supra*; *Matter of Zanetti v Orange & Rockland Util., supra*).[1] Nonetheless, in an increasing number of cases beginning with *Trathen Logging Co., Inc.* (2003 WL 21545736, 2003 NY Wrk Comp LEXIS 84158 [July 8, 2003]), the Workers' Compensation Board has formulated "a different inquiry" to be employed where there is a claim for apportionment in a schedule loss of use case (2003 WL at *2, 2003 NY Wrk Comp LEXIS at *4; *see e.g. Pathways, Inc.*, 2006 WL 770756, 2006 NY Wrk Comp LEXIS 2278 [Mar. 16, 2006]; *Erie County Med. Ctr.*, 2005 WL 1794456, 2005 NY Wrk Comp LEXIS 6297 [July 26, 2005]; *Best Fire*, 2004 WL 1045123, 2004 NY Wrk Comp LEXIS 10172 [May 4, 2004]; *Valeo*, 2004 WL 291836, 2004 NY Wrk Comp LEXIS 7407 [Feb. 9, 2004]).

Whereas our prior apportionment cases concerned the "dispositive" question of whether the preexisting injury caused the claimant to lose time from employment or work with restrictions prior to the occurrence of the second work-related injury (*Matter of Bruno v Kelly Temp Serv., supra* at 731; *compare Matter of Hogan v Hilltop Manor of Niskayuna, supra* at 823-824, *with Matter of Rafferty v Four Corners, LLC*, 25 AD3d 840, 841 [2006]), in the new line of Board precedent, the focus has changed to "whether there is medical evidence of a pre-existing loss of use, range of motion or function of the body part in question which *would have* resulted in a schedule loss of use finding had the prior injury been compensable" (*Trathen Logging Co.*,

---

1. Although the majority does not agree with my analysis of cases such as *Matter of Edmondson v State Ins. Fund* (*supra*), it cannot be argued that *Edmondson* stands for the proposition that *the test to be applied* in cases involving preexisting non-work-related injuries—even those involving a schedule loss of use—is the test formulated by this Court in *Matter of Carbonaro v Chinatown Sea Food* (*supra*). Even if, as the majority notes, we have "never held as a matter of law that apportionment cannot be applied where the prior nonwork-related injury would have resulted in a schedule loss of use award," we *have* repeatedly held that "apportionment is inapplicable as a matter of law '[w]here the prior condition was not the result of a compensable injury and the claimant is able to effectively perform his or her job despite the preexisting condition' " (*Matter of Johnson v Feinberg-Smith Assoc., supra* at 827, quoting *Matter of Krebs v Town of Ithaca, supra* at 883-884).

*Inc.,* 2003 WL at *2, 2003 NY Wrk Comp LEXIS at *5 [emphasis added]; *see Ravena Coeymans Selkirk,* 2004 WL 2826623, *2, 2004 NY Wrk Comp LEXIS 16309, *3-4 [Dec. 3, 2004]). Given this change in analytical focus, it appears that the Board's *Trathen Logging* cases usually result in a finding of apportionment despite the fact that the claimants in these cases were fully employed and worked without restriction prior to his or her work-related injury (*see e.g. Erie County Med. Ctr.,* 2005 WL at *2, 2005 NY Wrk Comp LEXIS at *3-4; *Best Fire,* 2004 WL at *1-2, 2004 NY Wrk Comp LEXIS at *3-4; *but see Villa Roma Resort & Conference,* 2005 WL 3704612, *2-3, 2005 NY Wrk Comp LEXIS 11463, *6-8 [Dec. 29, 2005]).[2]

In light of the past precedent of this Court and the fact that *Trathen Logging* and its progeny appear to mark a radical departure therefrom, I have considerable concerns whether the Board's new line of apportionment determinations are a rational interpretation of the Workers' Compensation Law. However, in my view, the instant case does not require us to reach a definitive determination concerning that issue. On the contrary, I believe that reversal of the Board's determination is required because its application of its new precedent to the facts of this case marks an unwarranted expansion of *Trathen Logging* into cases which do not involve a schedule loss of use.

The Board's rationale for *Trathen Logging* and its progeny is that, inasmuch as schedule loss of use cases concern compensation for lost earning capacity attributable to the permanent loss of use or function of a particular body part (*see generally Matter of Landgrebe v County of Westchester,* 57 NY2d 1, 6 [1982]; *Matter of Fox v Crosbie-Brownlie, Inc.,* 284 AD2d 42, 44 [2001]), it would be "unjust" to hold a workers' compensation carrier

---

**2.** The ease with which the Board's new analysis becomes outcome determinative is fully apparent in the record in this case. During cross-examination of claimant's treating orthopedist, the physician initially indicated that claimant's original injury would *not* have been amenable to a schedule loss of use finding—had it been compensable—because she retained full range of motion following surgery. Upon further inquiry from counsel for the employer, however, the orthopedist was forced to admit that, pursuant to guidelines published by the Board in 1996—i.e., three years following claimant's surgery—the *minimum* schedule that is permitted following a surgery like that undergone by claimant is 15%. This series of concessions based on hypothetical premises served as the primary basis for the Board's conclusion that there is medical evidence indicating that claimant had a loss of use of her left leg prior to her 2002 work-related accident (*Ravena Coeymans Selkirk,* 2004 WL at *2, 2004 NY Wrk Comp LEXIS at *3-4). Unlike the majority, under these circumstances, I would not ascribe significance to the orthopedist's eventual "opinion" that claimant's preexisting injury would have been amenable to schedule loss of use award had it been work related.

responsible for an overall loss of use that is partially attributable to a prior noncompensable injury (*see e.g. Trathen Logging Co. Inc.,* 2003 WL at *2, 2003 NY Wrk Comp LEXIS at *6). When the case does not concern a schedule loss of use, however, this rationale has no application since there has been no finding of a loss of future earning capacity which may need to be allocated between the preexisting and work-related injuries in order to prevent injustice to the carrier.

Notably, claimant herein has not yet received a schedule loss of use award and the record is unclear as to whether she ever will. In the original decision rendered by a Workers' Compensation Law Judge herein, claimant was awarded compensation for eight days of lost work time and no mention whatsoever was made of a schedule loss of use award (*see* Workers' Compensation Law § 15). Subsequent decisions made mention of the need to resolve the question of apportionment, but, again, no reference was made to a schedule loss of use finding or any permanency concerning claimant's disability. Moreover, the carrier's application for Board review of the WCLJ decision denying apportionment only made explicit reference to the need to apportion claimant's medical expenses.[3] Finally, although the Board's ultimate decision refers to the carrier's contention that claimant suffered "a permanent disability" requiring apportionment, the Board never made a finding that such a disability exists. Accordingly, since this matter does not involve a finding of permanency, it is not a schedule loss of use case, and I would, therefore, hold that application of the Board's *Trathen Logging* precedent requires reversal under the particular facts presented (*compare Matter of Bremner v New Venture Gear,* 31 AD3d 848, 849 n [2006] [decided herewith], *affg New Venture Gear,* 2005 WL 54122, 2005 NY Wrk Comp LEXIS 276 [Jan. 10, 2005]). In my opinion, the question of whether *Trathen Logging* and its progeny constitutes a correct interpretation of the Workers' Compensation Law would thereby await resolution in the appropriate case.

---

**3.** As the Board itself has repeatedly recognized, inasmuch as "[m]edical expenses are not payment of compensation as compensation is defined by [the Workers' Compensation Law]" (Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 13, at 532), payments for a claimant's medical expenses may be apportioned to a noncompensable preexisting injury irrespective of whether the claimant's award for compensation is apportionable (*see e.g. Jefferson Rehabilitation Ctr.,* 2006 WL 907701, *2, 2006 NY Wrk Comp LEXIS 2858, *6-7 [Apr. 3, 2006]; *Farmingville Flower & Gift,* 2006 WL 832797, *2, 2006 NY Wrk Comp LEXIS 2616, *5-6 [Mar. 28, 2006]; *City of Rochester,* 2003 WL 21206786, *2, 2003 NY Wrk Comp LEXIS 82499, *5-6 [May 16, 2003]).

Ordered that the decision is affirmed, without costs.