Matter of Hughes v Mid Hudson Psychiatric Ctr. (2021 NY Slip Op 04939)





Matter of Hughes v Mid Hudson Psychiatric Ctr.


2021 NY Slip Op 04939


Decided on September 2, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:September 2, 2021

531160
[*1]In the Matter of the Claim of Warren Hughes, Appellant,
v
Mid Hudson Psychiatric Center et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:August 18, 2021

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Colangelo, JJ.

Law Offices of Ernest L. Harris, LLP, Newburgh (Ernest L. Harris of counsel), for appellant.
Tanisha S. Edwards, State Insurance Fund, Albany (Bess Sokaris of counsel), for Mid Hudson Psychiatric Center and another, respondents.



Egan Jr., J.
Appeal from a decision of the Workers' Compensation Board, filed November 13, 2019, which ruled, among other things, that claimant was entitled to a schedule loss of use award and that apportionment applied to that award.
In December 2016, claimant suffered a work-related injury to his right knee and underwent partial medial and lateral menisectomies and a synovectomy. His claim for workers' compensation benefits was subsequently established. In August 2018, David DiMarco, claimant's surgeon, opined that claimant had reached maximum medical improvement and had a 45% schedule loss of use (hereinafter SLU) of the right leg. Louis Nunez, a medical examiner who evaluated claimant on behalf of the employer's workers' compensation carrier, agreed that claimant had a 45% SLU of the right leg, but opined that the SLU was 60% attributable to a prior noncompensable injury to claimant's right knee that occurred in 1976 and resulted in six surgeries. When advised of the prior injury and related surgeries, DiMarco issued a new report finding that 30% of claimant's SLU was attributable to the prior injury. Following a hearing, the Workers' Compensation Law Judge found, among other things, that Nunez's opinion was more credible and that claimant has a 45% SLU, 40% of which is causally related to the 2016 injury. On administrative review, the Workers' Compensation Board found, among other things, that claimant had a 45% SLU of the right leg but rejected both medical opinions regarding the apportionment percentages, citing the complete lack of medical evidence in the record regarding claimant's prior injury and surgeries. The Board found, however, that apportionment is applicable because claimant's prior injury would have resulted in an SLU award of 17½% under the 1996 New York State Workers' Compensation Board Medical Guidelines (hereinafter 1996 guidelines) if it had been compensable. Accordingly, the Board found that claimant has a 27½% SLU causally related to the 2016 injury. Claimant appeals.
"As a general rule, apportionment is not applicable as a matter of law where the preexisting condition was not the result of a compensable injury and the claimant was able to effectively perform his or her job duties at the time of the work-related accident despite the preexisting condition" (Matter of Bremner v New Venture Gear, 31 AD3d 848, 848 [2006] [citations omitted]; accord Matter of Cox v Suburban Propane, LP, 179 AD3d 1425, 1425-1426 [2020]). "A limited exception to this general rule exists, however, insofar as apportionment may be applicable in an SLU case if the medical evidence establishes that the claimant's prior injury — had it been compensable — would have resulted in an SLU finding" (Matter of Sanchez v STS Steel, 154 AD3d 1027, 1028 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of Scally v Ravena Coeymans Selkirk Cent. School Dist., 31 AD3d 836, 838 [2006]). Thus, "[t]he determinative issue is whether claimant's [*2]prior condition constitutes a disability in a compensation sense" (Matter of Scally v Ravena Coeymans Selkirk Cent. School Dist., 31 AD3d at 837).
Claimant's medical records contain references to a history of an injury to the right knee in 1976 and him undergoing several subsequent surgeries on the knee, including a reference in Nunez's report that claimant had undergone a lateral and medial menisectomy. There are, however, no medical records or operative reports regarding the 1976 injury or the related surgeries in the record and no objective documentation indicating to what extent, if any, that claimant's use or range of motion of the knee was impaired prior to the 2016 injury (see Matter of Levitsky v Garden Time, Inc., 126 AD3d 1264, 1265 [2015]; Matter of Wilcox v Niagara Mohawk Power Corp., 69 AD3d 1264, 1265 [2010]).[FN1] Accordingly, we agree with the Board that the medical experts' opinions regarding the percentage of claimant's SLU that should be apportioned with the 1976 injury were speculative due to the lack of supporting objective medical evidence in the record (see Matter of Wilcox v Niagara Mohawk Power Corp., 69 AD3d at 1265).
Despite noting the sparsity of the record regarding the 1976 injury and related surgeries and rejecting the apportionment percentages of the medical experts as speculative, the Board determined that had claimant's 1976 injury been compensable it would have resulted in a total SLU award of 17½% pursuant to the 1996 guidelines. Specifically, the Board noted evidence of claimant having a menisectomy of the right knee following the 1976 injury and found that it would have resulted in a 7½% SLU of the right leg (see State of New York Workers' Compensation Board Medical Guidelines § I [B] [2], special consideration 9, at 19 [June 1996]). According to the 1996 guidelines, "[m]edial or lateral meniscus excision, for one or both [knees], equals 7½-10% loss of use of the leg" and "[p]artial excision of the meniscus without defects equals 7½% loss of use of the leg" (State of New York Workers' Compensation Board Medical Guidelines § I [B] [2], special consideration 9, at 19 [June 1996]). The 1996 guidelines further state that "[e]xcision of the meniscus should be documented by operative report or pathological report" (State of New York Workers' Compensation Board Medical Guidelines § I [B] [2], special consideration 9, at 19 [June 1996]). Similarly, the Board concluded that DiMarco's observation of preexisting stage 3 and 4 chondromalacia of the right knee during the 2016 surgery would have resulted in a 10% SLU of the right knee under the 1996 guidelines if the 1976 injury had been compensable. Pursuant to the 1996 guidelines, "[c]hondromalacia patella, mild to marked degree, equals 7½-10% loss of use of the leg, depending on the defects of motion and atrophy of the muscles found" (State of New York Workers' Compensation Board Medical Guidelines § I [B] [2], special consideration 4, at 18 [June 1996]).
We recognize [*3]that the Board's medical guidelines "provide 'useful criteria' and the Board makes the ultimate determination of a claimant's degree of disability, but that determination must be supported by substantial evidence" (Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d 1873, 1876 [2020], quoting Matter of Carlucci v Omnibus Print. Co., Inc., 68 AD3d 1259, 1260 [2009]; see Matter of Empara v New Rochelle Sch. Dist., 130 AD3d 1127, 1129 [2015], lv denied 26 NY3d 911 [2015]; Matter of Thomas v City of Albany School Dist., 307 AD2d 664, 665 [2003]). Moreover, "although the Board may reject medical evidence as incredible or insufficient, it may not fashion its own medical opinion" (Matter of Rodriguez v Coca Cola, 178 AD3d 1184, 1186 [2019]; see Matter of Sinelnik v AJK, Inc., 175 AD3d 1732, 1734 [2019]). Here, there are no operative or pathological reports from any surgeries related to the 1976 injury in the record. Nor is there any medical evidence regarding the degree of disability, if any, that had resulted from the 1976 injury and/or surgery and the record reflects that claimant was fully employed with no restrictions at the time of the 2016 injury. Further, even assuming, without deciding, that an evaluation of the 1976 injury under the 1996 guidelines is appropriate for the purposes of determining whether that injury would have resulted in an SLU award, there is no medical opinion that the 1976 injury would have resulted in an SLU award at the time of the injury or under the subsequently published 1996 guidelines. In light of the lack of supporting medical evidence, the Board's finding that apportionment is applicable because the 1976 injury would have resulted in an SLU award is not supported by substantial evidence and must be reversed (see Matter of Levitsky v Garden Time, Inc., 126 AD3d at 1265; Matter of Wilcox v Niagara Mohawk Power Corp., 69 AD3d at 1265; compare Matter of Sanchez v STS Steel, 154 AD3d at 1029; Matter of Picone v Putnam Hosp., 153 AD3d 1461, 1462 [2017]).
Garry, P.J., Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that apportionment of claimant's schedule loss of use award with a prior noncompensable injury was warranted; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: According to Nunez's testimony, there is no proof in the record as to claimant's range of motion prior to the 2016 injury, and he admitted that he "cannot state within a degree of medical certainty that . . . claimant had any functional or anatomical loss of use as noted in the New York State guidelines" prior to the most recent injury.