■ In the Matter of the Claim of JOANNE MACE, Claimant, v OWL WIRE & CABLE COMPANY et al., Appellants. AGGREGATE TRUST FUND, Respondent; WORKERS' COMPENSATION BOARD, Respondent. [727 NYS2d 487] —Spain, J. Appeal from a decision of the Workers' Compensation Board, filed June 22, 1999, which determined what interest rate should be applied in calculating assessments to the Aggregate Trust Fund.

Claimant's husband (hereinafter decedent) suffered an acute

heart attack in the course of his employment on January 19, 1971 and died 20 years later, on January 3, 1991. In 1992, the Workers' Compensation Board determined that decedent's 1991 death was causally related to his 1971 heart attack, a finding not at issue. At a 1995 hearing, the Workers' Compensation Law Judge (hereinafter WCLJ) ordered an actuarial computation to determine the amount the workers' compensation carrier is required to pay into the Aggregate Trust Fund (hereinafter the Fund), i.e., the present value of claimant's unpaid death benefits award. The WCLJ thereafter adopted the 1997 actuarial reply, which calculated the present value of the award as of February 3, 1998 (assuming the periodic award payments would be made to that date) using a 3% assumed annual interest rate.

The workers' compensation carrier appealed, claiming that Workers' Compensation Law § 27 (5) provides that the present value of the award should be calculated using a 6% assumed interest rate. The full Board ultimately disagreed, determining that the date of decedent's heart attack in 1971—and not his subsequent 1991 death—is the date of his "accident" which determines the assumed interest rate to be used under Workers' Compensation Law § 27 (5) in calculating the present value of an award to be paid into the Fund by the employer or carrier. Thus, the Board ruled that under Workers' Compensation Law § 27 (5), the assumed interest rate of 3% applies to calculate the present value of the award for this 1971 accident.

Notably, the statutory "interest" rate used to calculate an award's present value acts essentially as a discount to the employer or workers' compensation carrier, reducing the amount that they are required to pay into the Fund by the assumed interest rate to be earned on payments made to the Fund. In 1983, the Legislature increased the interest rate—or discount—from 3% to 6% to reduce employer/carrier costs when experience demonstrated that the 3% rate used to calculate the present value of awards resulted in employers/carriers paying large amounts of money into the Fund, whose assets were then reinvested at higher interest rates, causing a considerable surplus in the Fund (*see*, Governor's Approval Mem, 1983 NY Legis Ann, at 185; Mem of State Executive Dept, 1983 McKinney's Session Laws of NY, at 2536). The apparently novel question of statutory interpretation raised on the carrier's appeal to this Court is whether the present value of an award to be paid into the Fund should be calculated based upon the assumed interest rate in effect on the date of the original injury or accident (3% in 1971) or the higher assumed

interest rate in effect at the time of decedent's subsequent causally-related death (6% in 1991). Because we conclude that the Board correctly interpreted Workers' Compensation Law § 27 (5), we affirm.

After an award for death benefits or other compensation requiring periodic payments has been granted the Board may, and in some cases must, require the employer or its workers' compensation carrier to pay the present value of all future payments of the award, together with administrative costs, into the Fund created by Workers' Compensation Law § 27 (see, Workers' Compensation Law § 27 [2]; Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 27, at 410). The Fund was created to secure the obligations of insurers to policyholders and beneficiaries in case of insolvency (see, American Ins. Assn. v Bouchard, 102 AD2d 775, 776, mod on other grounds 64 NY2d 379, appeal dismissed and cert denied 474 US 803; Mem of State Executive Dept, 1983 McKinney's Session Laws of NY, at 2529, 2536). Payment into the Fund discharges the employer or carrier from further liability to the claimant for the original award, unless it is subsequently modified, and the Fund assumes liability for payment to the claimant (see, Workers' Compensation Law § 27 [3], [4]; see also, American Ins. Assn. v Bouchard, supra, 64 NY2d, at 384; Matter of Ladley v Akzo Salt, 270 AD2d 592).

Workers' Compensation Law § 27 (5) provides, as relevant to this appeal, that the employer or its workers' compensation carrier is required to pay into the Fund the present value of an award, which is actuarially computed using the "survivorship annuitants table of mortality, the remarriage tables of the Dutch Royal Insurance Institute and interest at [3.5%] per annum on claims based on accidents occurring up to and including June [30, 1939], at [3%] per annum on claims based on accidents occurring from July [1, 1939] up to and including August [31, 1983], and at [6%] per annum on claims based on accidents occurring thereafter" (emphasis supplied). Here, the Board ultimately concluded that, consistent with its prior decisions interpreting Workers' Compensation Law § 27 (5), the date of decedent's original 1971 heart attack or "accident" controls for purposes of assigning the applicable assumed statutory interest rate of 3% in effect at that time under subdivision (5), and not the date of his causally-related 1991 death. Inasmuch as we find this statutory interpretation to be rational and reasonable and consistent with the Board's prior decisions, we uphold it (see, Matter of Goodman v Pollio Dairy Prods.,

147 AD2d 833, *lv denied* 74 NY2d 606; *see also, Matter of Howard v Wyman*, 28 NY2d 434, 438; *Matter of Waters v City of New York*, 256 AD2d 680).

As with any case of statutory interpretation, ascertainment of legislative intent begins with the language of the statute itself (*see, Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583; *Matter of Owens Corning v Board of Assessors*, 279 AD2d 118, 120). Workers' Compensation Law § 27 (5) clearly and expressly ties the interest rates to the date of the "accidents" and not to the date of a subsequent, causally-related death. The workers' compensation carrier is correct that a claim for death benefits is a separate and distinct claim from a claim for disability benefits for the underlying injury to which the death is causally-related (*see, Matter of Zechmann v Canisteo Volunteer Fire Dept.*, 85 NY2d 747, 751, 753; *Matter of Brannigan v Town of Oyster Bay*, 141 AD2d 942; *see also*, Workers' Compensation Law §§ 15, 16). However, the Legislature, aware of this distinction and having incorporated provisions into Workers' Compensation Law § 27 distinguishing between such claims, nonetheless tied the interest rate and present value calculation for *all* covered awards—whether for death benefits or for total permanent or permanent partial disability—to the date of the accident underlying the disability or death.

Concededly, since a cause of action for death benefits does not accrue prior to death (*see, Matter of Zechmann v Canisteo Volunteer Fire Dept.*, *supra*, at 753) and an award for such benefits is likewise not made until after death, the Legislature could have provided for the more recent date of death to determine the assumed interest rate to be used to calculate the present value of unpaid death benefits thereafter payable into the Fund. Indeed, the Board's November 23, 1998 determination, later rescinded, ruling that the 6% rate—in effect at the time of decedent's 1991 death—applies, made just such a policy argument that the more recent, higher interest rate is the one which more likely matches the interest rate that the Fund will earn on the employer/carrier's payment. Such policy arguments, however, are better addressed to the Legislature (*see, Joblon v Solow*, 91 NY2d 457, 465 n 2). Further, the substance and history of Workers' Compensation Law § 27 (5) do not support the conclusion that the Legislature intended to directly tie employer/carrier contributions into the Fund to prevailing market forces or expected returns on given payments, as evidenced by the fact that the 3% interest or discount rate remained in effect for 44 years until a considerable surplus developed by

1983, at which time the 6% rate was adopted and remains in effect today. Rather, other provisions were adopted to reduce costs to employers and carriers in the event of a surplus in the Fund (*see*, Workers' Compensation Law § 27 [7]).

Crew III, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the decision is affirmed, without costs.