[874 NYS2d 316]

In the Matter of the Claim of MURIEL WEBB, as Widow of JERRY WEBB, Deceased, Respondent, v COOPER CROUSE HINDS COMPANY, Appellant. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, March 5, 2009

### APPEARANCES OF COUNSEL

*Wolff, Goodrich & Goldman, L.L.P.*, Syracuse (*Robert E. Geyer Jr.* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General*, New York City (*Steven Segall* of counsel), for Workers' Compensation Board, respondent.

### OPINION OF THE COURT

MERCURE, J.P.

In 1997, Jerry Webb (hereinafter decedent) was found to have a permanent partial disability, which was apportioned 75% to an occupational lung disease and 25% to noncompensable causes. Decedent was hospitalized in June 2005 in connection with his ongoing history of upper respiratory infection and fainting spells. Decedent's treating physician, Robert Newman, indicated that while decedent had a history of prostate cancer, a prostate specific antigen test ruled out a recurrence or metastasis of the cancer. Decedent was discharged in August 2005 with diagnoses of spinal abscess, chronic obstructive pulmonary disease, diabetes, postradiation status for prostate cancer, gastroparesis and candida esophagitis. He was then admitted into hospice care, and he died in October 2005. His death certificate lists the cause

of death as chronic obstructive pulmonary disease, due to or as a consequence of asbestosis. Following hearings, a Workers' Compensation Law Judge (hereinafter WCLJ) awarded death benefits to claimant, decedent's wife, finding that decedent's death was causally related to his occupational disease. The Workers' Compensation Board affirmed, prompting this appeal by the employer.

We affirm. Initially, we reject the employer's argument that the Board applied the incorrect standard of review in determining whether decedent's death was causally related to his established occupational lung disease. While the Board indicated that it found that "sufficient credible medical evidence" supported a causal relationship, rather than referencing the required preponderance of the evidence standard (*see e.g. Matter of Bochkarev v Henry's Landscaping Serv.*, 10 AD2d 398, 400 [1960]), a review of the Board's decision nonetheless makes clear that it "weigh[ed] the evidence and . . . [gave] effect to its preponderance" (*Matter of Brown v Mobil Oil Co.*, 20 AD2d 833, 833 [1964]; *accord Matter of Ellingwood v Liberty Group Publ., Inc.*, 38 AD3d 1108, 1109 [2007]).

Turning to the merits, we note that "[t]o be entitled to benefits, the claimant had only to prove that the death was causally related to the injury" (*Matter of Zechmann v Canisteo Volunteer Fire Dept.*, 85 NY2d 747, 753 [1995]). Decedent's death certificate, the workers' compensation proof of death form and a contemporaneous letter signed by Newman, as the treating physician, list the cause of death as lung disease resulting from occupational exposure to asbestos. Similarly, Newman testified that the direct cause of death was chronic obstructive pulmonary disease, asbestosis was a contributing factor, and both conditions were related to decedent's industrial exposures. Newman further explained that while decedent had a history of prostate cancer, it was in remission and testing ruled out metastasis of the cancer. In our view, this proof provides substantial evidence to support the Board's determination that decedent's death was a consequence of his occupational lung condition. While the employer's medical expert concluded that decedent's pulmonary disease was not sufficiently severe to cause his death, it is within the Board's sole province to resolve conflicting medical evidence (*see Matter of Brown v Clifton Recycling*, 1 AD3d 735, 736 [2003]; *Matter of Altes v Petrocelli Elec. Co.*, 283 AD2d 829, 830 [2001]; *Matter of Tompkins v Sunrise Heating Fuels*, 271 AD2d 888, 889 [2000]).

■ Finally, we reject the employer's argument that the Board erred in failing to apportion claimant's death benefits in the same manner that decedent's lifetime benefits were apportioned—75% to his occupational disease and 25% to unrelated causes. "[A] claim for death benefits—often, as here, involving the quite different question of whether the injury was causally related to the death—is a separate and distinct legal proceeding brought by the beneficiary's dependents and is not equated with the beneficiary's original disability claim" (*Matter of Zechmann v Canisteo Volunteer Fire Dept.*, 85 NY2d at 751; *see Matter of Mace v Owl Wire & Cable Co.*, 284 AD2d 672, 675 [2001]). Moreover, on a claim to recover death benefits, "the work-related illness need not be the sole or even the most direct cause of death, provided that the claimant demonstrates that the compensable illness was a contributing factor in the decedent's demise" (*Matter of Imbriani v Berkar Knitting Mills*, 277 AD2d 727, 730 [2000]; *see Matter of Altes v Petrocelli Elec. Co.*, 270 AD2d 767, 769 [2000]; *Matter of Losso v Tesco Traffic Servs.*, 248 AD2d 812, 813 [1998]; *see also Matter of Brown v Clifton Recycling*, 1 AD3d at 736). In reliance upon this line of cases and the absence of any indication in Workers' Compensation Law § 16 that death benefits are to be apportioned in the same manner as disability benefits (*cf.* Workers' Compensation Law § 15 [7]; *Matter of Engle v Niagara Mohawk Power Corp.*, 6 NY2d 449, 452-453 [1959]), the Board has concluded—correctly, in our view—that apportionment is not available between work-related and non-work-related causes of death (*see Buffalo Forge Co.*, 2005 WL 1794390, *2-5, 2005 NY Wrk Comp LEXIS 6235, *6-14 [WCB No. 8020 5320, July 25, 2005]; *see also State Univ. of N.Y.*, 2005 WL 3368097, *1-2, 2005 NY Wrk Comp LEXIS 10365, *3-6 [WCB No. 5041 1746, Nov. 23, 2005]).* Inasmuch as substantial evidence supports the Board's determination that decedent's illness was a contributing factor in his death, claimant is entitled to benefits without apportionment.

Lahtinen, Malone Jr. and Kavanagh, JJ., concur.

Ordered that the decision is affirmed, without costs.

---

* ■ As the Board has acknowledged, *Matter of Rados v Woodlawn Water Supply Dist.* (31 AD2d 879, 879 [1969]) contains dicta that could be read to suggest that such apportionment may be appropriate under certain circumstances. To the extent that *Matter of Rados* sets forth a rule that is contrary to our decision herein, it should no longer be followed.