[998 NE2d 377, 975 NYS2d 714]

In the Matter of the Claim of GAUDENZIA HRONCICH, Respondent, v CON EDISON et al., Appellants, and SPECIAL DISABILITY FUND, Respondent. WORKERS' COMPENSATION BOARD, Respondent.

Argued and submitted September 9, 2013; decided October 15, 2013

## POINTS OF COUNSEL

*Cherry, Edson & Kelly, LLP*, Carle Place (*David W. Faber* of counsel), and *Steven M. Scotti*, New York City, for appellants. I. The plain language in Workers' Compensation Law § 15 (7) expressly permits apportionment in death benefit claims. (*Matter of Belmonte v Snashall*, 2 NY3d 560; *Matter of De Mayo v Rensselaer Polytech Inst.*, 74 NY2d 459; *Matter of Krausa v Totales Debevoise Corp.*, 84 AD3d 1545; *Montclair v Ramsdell*, 107 US 147; *United States v Menasche*, 348 US 528; *Williams v Taylor*, 529 US 362; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205; *Matter of Bliss v Bliss*, 66 NY2d 382; *Matter of Schwab v Emporium Forestry Co.*, 167 App Div 614; *Matter of State Indus. Commn. v Newman*, 222 NY 363.) II. The apportionment test requires that the prior condition, whether work-related or not, constitute a "disability in a compensation sense." (*Matter of Krebs v Town of Ithaca*, 293 AD2d 883, 100 NY2d 501; *Matter of Carbonaro v Chinatown Sea Food*, 55 AD2d 756; *Matter of Altobelli v Allinger Temporary Servs., Inc.*, 70 AD3d 1083; *Matter of Moore v St. Peter's Hosp.*, 18 AD3d 1001; *Matter of Bruno v Kelly Temp Serv.*, 301 AD2d 730; *Matter of Ricci v Riegel & Sons*, 278 AD2d 673; *Matter of Brown v Harden Furniture*, 34 AD3d 1028; *Matter of Bremner v New Venture Gear*, 31 AD3d 848; *Matter of Webb v Cooper Crouse Hinds Co.*, 62 AD3d 57.) III. The Appellate Division's reliance on *Matter of Webb v Cooper Crouse Hinds Co.* (62 AD3d 57 [2009]) fails to recognize and explain that it had applied the apportionment test in death benefit claims in prior cases. (*Matter of Ricci v Riegel & Sons*, 278 AD2d 673; *Matter of Brown v Harden Furniture*, 34 AD3d 1028.) IV. The *Webb* decision is erroneous as a matter of law because all three grounds provided to deny apportionment are specious and insufficient to extinguish the statutory authority of Workers' Compensation Law

§ 15 (7). (*Matter of Webb v Cooper Crouse Hinds Co.*, 62 AD3d 57; *Matter of Reagin v Collins*, 52 AD2d 1010; *Matter of Salerno v Board of Educ., Utica City School Dist.*, 35 AD2d 764; *Matter of Zechmann v Canisteo Volunteer Fire Dept.*, 85 NY2d 747; *Commissioners of State Ins. Fund v Hallmark Operating, Inc.*, 61 AD3d 1212; *Matter of Sidaris v Brookhaven Mem. Hosp.*, 271 AD2d 884; *Matter of Kuczkowski v Bethlehem Steel Corp.*, 90 AD2d 612; *Matter of Tober v Crescent Niagara Corp.*, 64 AD2d 741; *Sanders v Winship*, 57 NY2d 391; *People v Mobil Oil Corp.*, 48 NY2d 192.) V. Apportionment is a fundamental principle expressed in the statute to ensure that compensation is awarded in proportion to causation. (*Matter of Engle v Niagara Mohawk Power Corp.*, 6 AD2d 631, 6 NY2d 449; *Matter of Post v Burger & Gohlke*, 216 NY 544; *Matter of Stoehrer v Lampert*, 285 App Div 85; *Matter of Barlog v Board of Water Commrs., City of Dunkirk, N.Y.*, 239 App Div 225; *Matter of Ricci v Riegel & Sons*, 278 AD2d 673; *Matter of Brown v Harden Furniture*, 34 AD3d 1028.)

*Steven M. Licht, Special Funds Conservation Committee*, Albany (*Jill B. Singer* of counsel), for Special Disability Fund, respondent. I. The Workers' Compensation Law provides for apportionment in death and disability claims. (*Matter of Engle v Niagara Mohawk Power Corp.*, 6 NY2d 449; *Matter of Putnam v Harrison Radiator Div. Gen. Motors Corp.*, 12 AD2d 543; *Tompkins v Hunter*, 149 NY 117; *Matter of Rosenblum v New York State Workers' Compensation Bd.*, 309 AD2d 120; *People v Caponigri*, 169 Misc 9.) II. This Appellate Division's decision limiting apportionment of death benefits is inconsistent with statute and precedent. (*Matter of Bruno v Kelly Temp Serv.*, 301 AD2d 730; *Matter of Hogan v Hilltop Manor of Niskayuna*, 303 AD2d 822; *Matter of Webb v Cooper Crouse Hinds Co.*, 62 AD3d 57; *Matter of Ricci v Riegel & Sons*, 278 AD2d 673; *Matter of Brown v Harden Furniture*, 34 AD3d 1028; *Matter of Rados v Woodlawn Water Supply Dist.*, 31 AD2d 879; *Matter of Johnson v Feinberg-Smith Assoc.*, 305 AD2d 826; *Matter of Krausa v Totales Debevoise Corp.*, 84 AD3d 1545; *Matter of Barlog v Board of Water Commrs., City of Dunkirk, N.Y.*, 239 App Div 225.)

*Eric T. Schneiderman, Attorney General*, Albany (*Laura Etlinger, Barbara D. Underwood* and *Andrea Oser* of counsel), for Workers' Compensation Board, respondent. I. The Workers' Compensation Law contains no language authorizing a reduction in death benefits on account of non-work-related contributing causes of death. (*Matter of Zechmann v Canisteo Volunteer*

*Fire Dept.*, 85 NY2d 747; *Matter of Imbriani v Berkar Knitting Mills*, 277 AD2d 727; *Matter of Webb v Cooper Crouse Hinds Co.*, 62 AD3d 57; *Matter of Droogan v Raymark Indus., Inc.*, 59 AD3d 803; *Matter of Altes v Petrocelli Elec. Co.*, 270 AD2d 767; *Matter of Meszaros v Goldman*, 307 NY 296; *Matter of Reagin v Collins*, 52 AD2d 1010; *Matter of Salerno v Board of Educ., Utica City School Dist.*, 35 AD2d 764; *Matter of Horton v McArdle & Casazza*, 53 NY2d 808.) II. The fact that Workers' Compensation Law § 15 has been read to require apportionment in the calculation of compensation benefits does not change the analysis. (*Matter of Engle v Niagara Mohawk Power Corp.*, 6 AD2d 631, 6 NY2d 449; *Matter of Morin v Town of Lake Luzerne*, 100 AD3d 1197; *Matter of Carbonaro v Chinatown Sea Food*, 55 AD2d 756; *Matter of Scally v Ravena Coeymans Selkirk Cent. School Dist.*, 31 AD3d 836; *Matter of McCloskey v Marriott Corp.*, 290 AD2d 671; *Matter of Rooney v Barker's Dept. Store*, 97 AD2d 587; *Matter of Glickman v Ace Equip. Co.*, 18 AD2d 946; *Matter of Cool v TP Brake & Muffler*, 305 AD2d 886; *Billy v Consolidated Mach. Tool Corp.*, 51 NY2d 152; *Matter of Landgrebe v County of Westchester*, 57 NY2d 1.) III. Prior decisions of the Workers' Compensation Board suggesting otherwise were based on dictum from the Appellate Division and do not demonstrate lack of clarity in the governing statutes. (*Matter of Rados v Woodlawn Water Supply Dist.*, 31 AD2d 879; *Matter of Engle v Niagara Mohawk Power Corp.*, 6 NY2d 449; *Matter of Brown v Harden Furniture*, 34 AD3d 1028; *Matter of Ricci v Riegel & Sons*, 278 AD2d 673; *Matter of Webb v Cooper Crouse Hinds Co.*, 62 AD3d 57.)

*Michael A. Cardozo, Corporation Counsel*, Brooklyn (*John Sweeney* of counsel), for City of New York, amicus curiae. The Appellate Division's interpretation of Workers' Compensation Law § 15 (7) ignores the express language of the statute concerning apportionment in death claims. (*Matter of Krebs v Town of Ithaca*, 293 AD2d 883.)

**OPINION OF THE COURT**

READ, J.

Section 16 of the Workers' Compensation Law authorizes death benefits when a work-related injury or disease "causes death," which the Appellate Division has interpreted to mean "contributes to death" (*see Matter of Imbriani v Berkar Knitting Mills*, 277 AD2d 727, 730 [3d Dept 2000]). At issue on this appeal is whether the Workers' Compensation Law requires

apportionment of death benefits between work-related and non-work-related causes—i.e., mandates the Workers' Compensation Board (the Board) to factor out non-work-related causes of death when making the award. We hold that the statute does not contemplate such apportionment.

## I.

In 1993, Antonio Hroncich (Hroncich) was diagnosed with asbestosis and asbestos-related pleural disease resulting from his employment as a plumber's helper and mechanic at the Consolidated Edison Company of N.Y., Inc. (Con Ed), where he worked from January 6, 1958 until his retirement on February 28, 1993 at the age of 61. The Board subsequently classified Hroncich as permanently partially disabled as of June 4, 1993. Hroncich's average weekly wages for the prior year were $900, and he was found to have suffered a loss in earning capacity of 37%, or $333 per week. In view of the nature of Hroncich's disability (a non-schedule permanent partial disability), his compensation benefits were calculated as two thirds of his reduced earning capacity, or $222 per week (*see* Workers' Compensation Law § 15 [3] [w]).

In 1999 Hroncich was diagnosed with thyroid cancer, unrelated to his work at Con Ed. The thyroid cancer eventually progressed to Hroncich's lungs, and he was admitted to the hospital on an emergency basis on August 1, 2007. He died on September 2, 2007.[1] On October 30, 2007, Hroncich's widow, Gaudenzia (claimant), filed a claim with the Board for death benefits from Con Ed, which is a self-insured employer. Con Ed's third-party administrator, Sedgwick Claims Management Services, Inc., controverted the claim, questioning causation and noting the absence of prima facie medical evidence.[2]

In deposition testimony subsequently submitted to the Workers' Compensation Law Judge (WCLJ), claimant's expert, a

---

**1.** Hroncich received $222 per week in workers' compensation until the date of his death because permanent partial disability wage replacement benefits were lifetime benefits at the time of his disablement. As amended in 2007, however, section 15 (3) (w) of the Workers' Compensation Law now limits these benefits, with duration depending upon the injury's severity; for example, compensation payable for a permanent partial disability may not exceed 275 weeks in cases, like Hroncich's, where the loss of wage-earning capacity is greater than 30 but not more than 40 percent (*see* L 2007, ch 6, § 4).

**2.** Hereafter, Con Ed and its third-party administrator are referred to collectively as "Con Ed."

physician certified as an internist and a specialist in pulmonary medicine, testified that Hroncich died of respiratory failure, and "if he didn't have the asbestosis[,] he would have eventually died of the . . . thyroid [cancer,] but he would have lived probably a little bit longer." When asked to opine as to the cause of Hroncich's death within a reasonable degree of medical certainty, the expert attributed 20% to the work-related pulmonary disease and 80% to thyroid cancer. He called this "an estimate" that was, in his view, "a valid one," although he acknowledged, on cross-examination, that "[i]t could be 75/25" or, when pressed, even "85/15 or 90/10." In essence, then, what the expert said is that Hroncich's thyroid cancer, once it invaded his lungs, triggered inevitable death that likely occurred earlier than it would have otherwise because his lungs were compromised by preexisting occupational lung diseases.

Con Ed did not submit any medical evidence to the WCLJ. But Con Ed argued that Hroncich's asbestosis and asbestos-related pleural disease played no role in his death because when he was diagnosed with these maladies in 1993 and 1994, his pulmonary function was normal; no subsequent pulmonary function testing was performed, and so the record lacked evidence of weakened lungs; and claimant's expert "could not state that [Hroncich] would have lived even one minute longer had he not been diagnosed with the work-related [diseases]." In the event causation was nonetheless found, Con Ed took the position that the award should recognize the overwhelming role of the non-work-related cause of Hroncich's death; namely, thyroid cancer. Conceding that the law regarding apportionment in this context was "unsettled," Con Ed nonetheless urged that a reduced award was "warranted" by the minimal and speculative contribution of work-related pulmonary diseases to Hroncich's demise.

In a decision filed May 6, 2009, the WCLJ found that Hroncich's death was "causally related to his established occupational lung disease," crediting claimant's expert. And citing *Matter of Webb v Cooper Crouse Hinds Co.* (62 AD3d 57 [3d Dept 2009]), the WCLJ rejected apportionment. In *Webb*, which was handed down only a few months before the WCLJ's decision, the Appellate Division endorsed the Board's view, expressed in its decision in *Buffalo Forge Co.* (2005 WL 1794390, \*2-5, 2005 NY Wrk Comp LEXIS 6235, \*4-14 [WCB No. 8020 5320, July 25, 2005]), that "apportionment is not available between

work-related and non-work-related causes of death" when determining death benefits (62 AD3d at 60).[3]

Although Hroncich's average weekly wages at the time of the compensable injury[4] in 1993 were $900, the statutory maximum for a death occurring after July 1, 2007 is $750 (*see* Workers' Compensation Law § 16 [5]). The percentage used to calculate death benefits depends upon the identity and number of survivors entitled to payment, as well as date of death. Here, the award was calculated at two thirds of the maximum weekly wages, or $500.25, because Hroncich was survived by his spouse and no dependent children, and he died after January 1, 1978 (*see* Workers' Compensation Law § 16 [1-c]). The award was

---

**3.** The claimant in *Webb* was found to have a permanent partial disability, apportioned 75% to an occupational lung disease and 25% to noncompensable causes. The Board determined that the claimant's subsequent death was causally related to the lung disease, and the Appellate Division held that substantial evidence supported this finding. The court then went on to reject the employer's argument that the claimant's death benefits should be apportioned in the same manner as his lifetime benefits—i.e., 75% to his occupational disease and 25% to unrelated causes. In so ruling, the Appellate Division relied on the inherent difference between compensation and death benefits, and the absence of any indication in Workers' Compensation Law § 16 that death benefits were to be apportioned in the same manner as compensation benefits.

The court further acknowledged in *Webb* that certain dictum in *Matter of Rados v Woodlawn Water Supply Dist.* (31 AD2d 879, 880 [3d Dept 1969] [i.e., "the fact that the first and last (heart) attacks were the only compensable accidents would not automatically prevent apportionment also against the nonoccupational injuries"]), was susceptible to being read "to suggest that . . . apportionment [between work-related and non-work-related causes of death] may be appropriate under certain circumstances," and added that "[t]o the extent that [*Rados*] sets forth a rule that is contrary to our decision herein, it should no longer be followed" (*Webb*, 62 AD3d at 60 n). The Board itself explained in *Buffalo Forge* that it had approved apportionment between compensable and noncompensable causes of death a few times in reliance on the *Rados* dictum, but ultimately concluded there was no statutory or case law authority to support this practice.

**4.** For purposes of the Workers' Compensation Law, "injury" and "personal injury" mean "only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom" (Workers' Compensation Law § 2 [7]). Workers' Compensation Law § 2 (15) defines an "occupational disease" as "a disease resulting from the nature of employment and contracted therein," and section 3 (2) (1)-(30) lists occupational diseases. Both asbestosis and asbestos-related pleural disease are considered occupational diseases where they arise from the distinctive nature of the occupation. Disablement from an occupational disease is treated as the happening of an accident within the meaning of the Workers' Compensation Law (*see* Workers' Compensation Law § 38; *see also id.* § 39).

then reduced by $90.69 to reflect the required offset for claimant's survivors insurance benefits under Social Security (*see id.*). Accordingly, by notice of decision filed January 26, 2010, the WCLJ made a continuing award to claimant in the amount of $409.31 per week.[5]

In a decision filed December 18, 2009, the Board affirmed the WCLJ's decision. In particular, the Board approved the WCLJ's reliance on *Webb*, remarking that "[t]here is no apportionment of causation in a consequential death claim so long as the underlying compensable condition is a cause of death." Con Ed sought review in the Appellate Division, Third Department, which is vested with exclusive jurisdiction to review Board decisions (*see* Workers' Compensation Law § 23).

By decision dated January 19, 2012, the Appellate Division affirmed, ruling that "inasmuch as the record concededly contains substantial evidence supporting the Board's determination that decedent's occupational illness contributed to his death,[6] claimant is entitled to death benefits without apportionment" (91 AD3d 1134, 1134 [3d Dept 2012]). The court observed that in *Webb* it had "explicitly [held] that apportionment is not available between work-related and non-work-related causes of death" (*id.* [internal quotation marks and citation omitted]). Moreover, the Appellate Division was "not persuaded by . . . arguments urging [it] to re-examine and overrule *Webb*," cautioning, as it also had in *Webb*, "that to the extent prior cases may contain language that could be read to suggest that apportionment may be appropriate under certain circumstances, those cases should not be followed" (*id.*). On September 6, 2012, we granted Con Ed leave to appeal (19 NY3d 810 [2012]). We now affirm.

## II.

Con Ed relies on Workers' Compensation Law § 15 (7), and, secondarily, Workers' Compensation Law § 10 to argue for apportionment of death benefits between work-related and non-

---

**5.** In addition to weekly death benefits, Workers' Compensation Law § 16 provides for funeral expenses (*see* Workers' Compensation Law § 16 [1]). In this case, the WCLJ, by notice of decision filed April 19, 2010, awarded claimant funeral expenses in the amount of $6,000.

**6.** Con Ed did not challenge the WCLJ's finding of causation, affirmed by the Board, in the Appellate Division, and has not appealed causation to us either.

work-related causes.[7] Without apportionment, Con Ed maintains, a deceased employee's survivors receive a "windfall" at the employer's expense, which is contrary to the "plain language and legislative intent expressed in Section 15 (7) [and] the fundamental principle embedded in the [statute], expressed [also] in Section 10, that liability be apportioned in proportion to causation."

Section 15, captioned "Schedule in case of disability," governs compensation benefits for employees disabled in the course of employment. Section 15 (7), in turn, applies to a particular category of injured employees—i.e., previously disabled employees who suffer a subsequent work-related injury. This provision states as follows:

> "Previous disability.[8] The fact that an employee has
> suffered previous disability or received compensation

---

**7.** Respondent Special Disability Fund, Special Funds Conservation Committee (the Special Fund) and amicus City of New York (the City) likewise argue that Workers' Compensation Law § 15 (7) explicitly provides for apportionment of death benefits. The City is the largest self insurer of workers' compensation benefits in the State of New York. The Special Fund is liable for reimbursement of Con Ed for death benefits paid to claimant exceeding the statutory retention period, or 104 weeks in view of Hroncich's date of disablement of June 4, 1993 (*see* Workers' Compensation Law § 15 [8] [ee]). The 2007 reforms to the Workers' Compensation Law phase out the Special Fund, closing it down to claims for an injury or illness with a date of accident or disablement on or after July 1, 2007, and disallowing written or evidentiary submissions made after July 1, 2010 in support of pending reimbursement claims (*see* L 2007, ch 6, § 76, amending Workers' Compensation Law § 15 [8] [h]).

**8.** The Workers' Compensation Law does not define "previous disability," but the Appellate Division has long held that, as a general rule, "[a]pportionment does not apply in cases in which the prior condition was not a disability in a compensation sense"; i.e., did not result in a diminution in earning capacity (*Matter of Carbonaro v Chinatown Sea Food*, 55 AD2d 756, 757 [3d Dept 1976], citing 2 Larson's Workmen's Compensation Law § 59.20 *et seq.*). "Stated another way, apportionment is not appropriate where the claimant's prior condition was not the result of a compensable injury and such claimant was fully employed and able to effectively perform his or her duties despite the noncompensable preexisting condition" (*Matter of Bruno v Kelly Temp Serv.*, 301 AD2d 730, 731 [3d Dept 2003]; *see also e.g. Matter of Altobelli v Allinger Temporary Servs., Inc.*, 70 AD3d 1083 [3d Dept 2010] [in a case where the claimant suffered a non-work-related back injury in 1989 and compensable back injuries in 2001 and 2004, the Board properly concluded that apportionment to the 1989 injury was precluded as a matter of law because this prior non-work-related injury did not render the claimant disabled in the compensation sense; specifically, the record revealed that between 1989 and 2001 the claimant was fully employed and able to effectively perform his duties despite the noncompensable preexisting condition]; *cf. Matter of Scally v Ravena Coeymans Selkirk Cent. School Dist.*, 31 AD3d 836 [3d Dept 2006] [deferring to the

*(n. cont'd)*

therefor shall not preclude him from compensation for a later injury nor preclude compensation for death resulting therefrom; but in determining compensation for the later injury or death his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury, provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability except as hereinafter provided in [Workers' Compensation Law § 15 (8); i.e., the Special Fund]'' (Workers' Compensation Law § 15 [7]).

Thus, the three clauses in section 15 (7) specify that (1) a previous disability does not disqualify an employee from receiving compensation benefits for a later work-related injury, or disqualify his survivors from receiving a death benefit where the later injury results in the employee's demise; (2) the measure of compensation or death benefits in this situation is the employee's earning capacity at the time of the later work-related injury, which would necessarily reflect any diminished earning capacity due to the previous disability; and (3) generally, the employee shall not receive compensation benefits in excess of those allowed for the later work-related injury considered by itself, which insures that the award is based solely on the diminished earning capacity attributable to the later injury rather than from all disabilities.

In short, the only death benefits that section 15 (7) mentions are keyed to the situation where death results from a later work-related injury to an employee suffering at the time from a previous disability. But this is not the case here: Hroncich did not suffer from a previous disability at the time of his *only* work-related injury, the disablement on June 4, 1993. And in any event, section 15 (7) says nothing about apportionment of death benefits between work-related and non-work-related causes of death. Con Ed hangs its hat on the second clause in

Board's determination that, as a narrow exception to the general rule, disability exists in a compensation sense and therefore apportionment is proper where a prior non-work-related injury would have resulted in a schedule loss of use award if it had occurred in the workplace since these awards are intended to compensate for diminution in future earning capacity]).

section 15 (7), which states that earning capacity at the time of a later work-related injury resulting in death constitutes the average weekly wages. But this requirement cannot apply to this case because, again, Hroncich did not suffer a later work-related injury. Section 15 (7) is simply not implicated where, as here, an employee does not suffer a disability in a compensation sense prior to a work-related injury or disablement.

Con Ed also looks to Workers' Compensation Law § 10, captioned "Liability for compensation," for support; specifically, that statute's direction that "[e]very employer subject to [the Workers' Compensation Law] shall . . . secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury" (Workers' Compensation Law § 10 [1]). Con Ed's point, as we understand it, is that by stating that employers must compensate employees for employment-related disability or death, this provision implicitly endorses apportionment by suggesting that non-work-related causes should be factored out of any award. This reads quite a bit into what appears to be simply a general statement of the principle underlying workers' compensation—i.e., every employer is responsible for insuring its employees against losses from injuries or death occurring in the course and scope of employment.

Workers' Compensation Law § 16, which governs eligibility for and the amount of death benefits, provides that "[i]f the injury causes death, the compensation shall be known as a death benefit and shall be payable in the amount and to or for the benefit of" certain listed survivors (Workers' Compensation Law § 16). Concomitantly, Workers' Compensation Law § 39, which authorizes death benefits for employees suffering from an occupational disease, the type of injury for which Hroncich received compensation benefits, states that "[i]f an employee . . . dies and his . . . death is caused by one of the diseases mentioned in [Workers' Compensation Law § 3 (2)], . . . his dependents shall be entitled to compensation . . . for his death in accordance with the provisions of articles two [Compensation] and three [Occupational Diseases] of this chapter." And a claim for death benefits by an employee's survivors is entirely separate from the employee's claim for compensation benefits (see *Matter of Zechmann v Canisteo Volunteer Fire Dept.*, 85 NY2d 747, 753 [1995]).

Importantly, there is no language in section 16 to suggest that the Board should apportion death benefits to work-related and

non-work-related causes when fashioning an award. Presumably, if the legislature had wanted this to be the case, it would have said so. Instead, however, the legislature made employers joint-and-several insurers of their injured employees' lives, subject to a prescribed schedule of payments. The death benefit is not about replacing lost wages, but rather compensates for a life lost at least partly because of work-related injury or disease (*see e.g.* Bill Jacket, L 1990, ch 296 [authorizing $50,000 in death benefits to non-dependent survivors]).

Of course, it is also true that when the legislature first enacted the operative language of section 16 in the early twentieth century, it essentially intended to ameliorate the condition of survivors of workers killed in industrial accidents, something that unfortunately happened with some frequency at the time. These lawmakers may not have had in mind a situation where death benefits become payable for a death caused, in every practical sense, by a non-work-related disease manifest many years beyond the usual retirement age, as happened here. And Con Ed argues that it is unreasonable for an employer to be responsible for paying the entire award under these circumstances. But the fact that section 15 incorporates certain apportionment principles for determining compensation (wage replacement) benefits, which, by their nature, are linked to loss of earning capacity, does not provide a basis for us to interpret section 16 to require apportionment of death benefits in the absence of any language in that provision even arguably commanding this result. As the Board points out, to the extent section 16 is thereby unduly harsh on employers, Con Ed's plea for redress is properly made to the legislature, not the courts.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (concurring). I agree with my colleagues that the Workers' Compensation Law statute, by its plain terms, does not provide for an apportionment of death benefits between work-related and non-worked-related causes. And while I also agree that Con Ed's challenge to the finding of causation was not preserved for our review (*see* majority op at 643 n 6), had that issue been preserved, I would find that the statute also does not permit an apportionment to support the claim that the death was causally related to the work-related injury. Thus, in my view, the claimant is not entitled to death benefits.

Workers' Compensation Law § 16 provides for an award of compensation for death benefits if the work-related injury

"*causes death*" (emphasis added). The term "death" is defined by statute as follows: " 'Death' when mentioned as a basis for the right to compensation means only death resulting from *such injury*" (Workers' Compensation Law § 2 [8] [emphasis added]). Appellate courts have concluded that this means the decedent's work-related injury "need not be the sole or even the most direct cause of death, provided that the claimant demonstrates that the compensable illness [or injury] was *a contributing factor* in the decedent's demise" (*Matter of Imbriani v Berkar Knitting Mills*, 277 AD2d 727, 730 [3d Dept 2000] [emphasis added]; *see also Matter of Brown v Clifton Recycling*, 1 AD3d 735 [3d Dept 2003]). This Court has yet to consider whether the appellate courts' interpretation of the statute is correct and if so, how far it should be taken, i.e. whether a work-related injury that is only a minor "contributing factor" to the decedent's death is compensable.

A review of the case law, including this one, puts that question into serious doubt. Under a broad reading of the appellate courts' precedent, *any* tangential work-related injury or disease that contributes in *any way* to the death *may* result in a death benefit. This leads to two problems. First, it lends itself to arbitrary determinations as to whether a particular death has a "causally related" antecedent. Second, there is no statutory basis for allowing "apportionment" in Workers' Compensation Law § 16 with respect to the cause of death, and at the same time denying apportionment when fashioning an award.

Here, there is no dispute that the direct and primary cause of the decedent's death was thyroid cancer, a condition totally "unrelated to his work at Con Ed" (majority op at 640). The work-related injury may have hastened the decedent's death, but that's all. The statute doesn't provide for an award in such a case. No apportionment should mean just that—as to both the cause and, as the Workers' Compensation Board argues here, the award of benefits. The legislature didn't write the statute that way; why should the courts rewrite it?

Judges GRAFFEO, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur with Judge READ; Judge PIGOTT in a separate concurring opinion in which Judge SMITH concurs; Chief Judge LIPPMAN taking no part.

Order affirmed, with costs.