In the Matter of ELLA RUFFINO, Respondent, v ISADORE ROSEN & SONS et al., Respondents, and SPECIAL DISABILITY FUND, Appellant. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, December 8, 1988

APPEARANCES OF COUNSEL

*Morris N. Lissauer* for appellant.

*Foley, Smit, O'Boyle & Weisman (Henriette Frieder* and *Hugh O'Boyle* of counsel), for Isadore Rosen and Sons and another, respondents.

*Robert Abrams, Attorney-General (Jane Lauer Barker* and *Iris A. Steel* of counsel), for Workers' Compensation Board, respondent.

### OPINION OF THE COURT

LEVINE, J.

While working for the employer in October 1973, decedent sustained an injury which resulted in a permanent partial disability, and the employer's workers' compensation insurance carrier was directed to pay disability benefits. Since decedent had a preexisting physical impairment (diabetes), the carrier applied for and was granted reimbursement from the Special Disability Fund pursuant to Workers' Compensation Law § 15 (8) (d). Decedent died January 7, 1982 and claimant, his widow, filed a claim for death benefits which alleged that decedent's death was causally related to the October 1973 injury. The carrier controverted the claim and also filed an application for reimbursement of death benefits from the

Fund pursuant to Workers' Compensation Law § 15 (8) (e). Following a hearing before an Administrative Law Judge (hereinafter ALJ), claimant's application for death benefits was granted. The carrier did not seek Workers' Compensation Board review of the decision which found, *inter alia,* a causal relationship between decedent's death and the October 1973 injury.

At the subsequent hearing on the carrier's application for reimbursement from the Fund, the Fund requested that the ALJ not make a ruling on the carrier's application so that the Fund could seek Board review of the prior decision which ruled that claimant's application was compensable. The request was denied and the carrier's application for reimbursement was granted. On appeal to the Board, the Fund argued that claimant should not have been awarded benefits since there was no causal relationship between decedent's death and the injury sustained in October 1973. The Board ultimately decided that the Fund lacked standing to raise this issue, and the Fund has appealed.

We affirm. The effect of a reversal of the Board's decision would be to permit the Fund to intervene or litigate or relitigate all the primary issues relating to the compensability of an injured or deceased employee's claim. The Fund bases this on the statutory right of the representative of the Fund to "be given notice of all hearings or proceedings involving the rights or obligations of [the Fund]" (Workers' Compensation Law § 15 [8] [i]). Because the Fund's obligation to reimburse is conditioned upon the work-related "subsequent injury * * * result[ing] in the death of the employee", as well as a determination "that either the injury or death would not have occurred except for such pre-existing permanent physical impairment" (Workers' Compensation Law § 15 [8] [e]), it is argued that the Fund has standing to contest the primary issue of causal relationship between the death and the work-related accident, the very same issue involved in claimant's entitlement to death benefits. It should be noted that the Fund's interpretation would also give it standing to contest the remaining elements of compensability of the underlying claim since, under the statute, the Fund's obligation to reimburse is also conditioned upon establishment that the employee's subsequent injury resulted from or was by an "accident arising out of and in the course of his employment" (Workers' Compensation Law § 15 [8] [d], [e]).

Such an interpretation, in our view, is contrary to the basic

statutory scheme and purpose of Workers' Compensation Law § 15 (8). Undeniably, the statutory purpose was to encourage employers to hire the permanently handicapped by giving them a right to reimbursement from the Fund for compensation payments arising out of a subsequent work-related accident where the prior handicapping condition contributed to the extent of the employee's disability or to his death *(see,* Workers' Compensation Law § 15 [8] [a]). Clearly, the statute views the liability of the Fund as secondary and one imposed only after compensability of the claim *against the employer* (who always remains primarily responsible) has been established (Workers' Compensation Law § 15 [8] [f]). Indeed, the statute, in permitting the employer to file a claim for reimbursement against the Fund at any time prior to the final determination of the underlying claim (not later than two years after the date of disability or death), clearly envisages the possibility that all issues of compensability, including causation, will have been fully litigated between the claimant and the carrier or employer *before* the required giving of "notice of all hearings or proceedings involving the rights or obligations of such fund" (Workers' Compensation Law § 15 [8] [i]). The statute makes clear that the employee's claim for compensation and the employer's claim for reimbursement are separate and distinct, and trigger separate proceedings. The Fund's representative is only appointed and, hence, only has standing, with respect to proceedings "involving claims against such fund" (Workers' Compensation Law § 15 [8] [i]), not as to proceedings on claims for compensation benefits against the employer. Any fear of collusion between the employer and the claimant is obviated by the fact that there is no right to reimbursement from the Fund for the first two years of benefits (Workers' Compensation Law § 15 [8] [d]).

■ Conferring full standing upon the Fund to litigate the primary issues of compensability of the underlying claim for benefits, even after an award of benefits has been made, will necessarily produce one of two alternative anomalous results, each of which will offend the purposes of Workers' Compensation Law § 15 (8). One of such results would be that the Fund would have a right to reopen a claimant's case and contest the compensability of the claim. This, however, would clearly be contrary to the purpose of earlier amendments to the statute enacted "to avoid extended medical controversies and delays in benefits" *(Schempp v City of New York,* 30 AD2d 129, 133, *affd* 24 NY2d 939). The only other alternative is that, as

would occur here under the Fund's position, the employer will be bound by the Board's award of compensation to the claimant, but will then be at risk of losing reimbursement when the Fund subsequently establishes that the underlying claim was not compensable. The deleterious effect of this result on the willingness of employers to hire the handicapped is self-evident. Thus, the primary purpose of section 15 (8) will be severely undercut.

The foregoing analysis is fully supported by the fact that, where the Legislature has intended to give full standing to a special fund to contest compensability, it has done so in explicit and unmistakable terms (see, Workers' Compensation Law § 26-a [1], [6]). The absence of any similarly explicit provision under Workers' Compensation Law § 15 (8) is indicative that no such standing was intended. Moreover, this case involves important policy considerations, and will affect operational practices with respect to the processing of claims for benefits and for reimbursements, such that weight should be given to the interpretation by the agency charged with the responsibility for administering the statute (see, *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459; *Matter of DeMayo v Rensselaer Polytech Inst.,* — AD2d — [Nov. 3, 1988]).

■ We are likewise unpersuaded by the Fund's argument that denial of any opportunity to contest causation infringed upon its right to procedural due process. That objection was not raised before the Board and, hence, was not preserved for review. In any event, the Fund is an entity created by the Legislature, administered by the Board's Chairman and the Commissioner of Taxation and Finance (Workers' Compensation Law § 15 [8] [h]), performing a governmental function on behalf of the State in furtherance of the purposes and policies of the Workers' Compensation Law. As such, the Fund stands in the position of a political subdivision of the State and cannot claim rights under the Constitution against State action (see, *Village of Herkimer v Axelrod,* 58 NY2d 1069, 1071; *Matter of Bowen v State Commn. of Correction,* 104 AD2d 238, 239). Accordingly, the Board's decision should be affirmed.

CASEY, J. (dissenting). The majority holds that the Special Disability Fund lacks standing to litigate an issue that, statutorily, must be determined upon the carrier's claim for reimbursement from the Fund. This holding is not based upon any statutory provision or common-law principle, but upon the

apprehension that a contrary conclusion will permit the Fund to controvert the compensability of the underlying claim and will undercut the primary purpose of Workers' Compensation Law § 15 (8). Since the Workers' Compensation Law affords the Fund the opportunity to litigate issues that are directly related to the Fund's liability for reimbursement, and since the majority's fears are unfounded, we respectfully dissent.

Workers' Compensation Law § 15 (8) (i) authorizes the designation of an attorney to represent the Fund, requires that the representative "be given notice of all hearings or proceedings involving the rights or obligations of [the Fund]", and authorizes the representative to take the steps "necessary to a proper defense of any claim". Pursuant to Workers' Compensation Law § 15 (8) (e), the Fund is liable for reimbursement to the carrier on its claim herein only if it is established that (1) the October 1973 injury sustained by decedent resulted in death, and (2) either the injury or death would not have occurred except for decedent's preexisting condition—diabetes (see, Matter of De Marco v City of Niagara Falls, 31 AD2d 667). In our view, Workers' Compensation Law § 15 (8) (i) expressly authorizes the Fund to litigate these two issues in defense of the carrier's claim for reimbursement.

Despite the clear and unambiguous language of Workers' Compensation Law § 15 (8) (i), the Workers' Compensation Board ruled that the Fund lacks standing to litigate the issue of whether the October 1973 injury resulted in decedent's death since that issue is virtually identical to the issue of causal relationship, a "primary issue" in the claim for death benefits by claimant. According to the Board, since the Fund lacks standing to controvert the compensability of the claim, it also lacks standing to litigate any issue necessarily decided on the claim of compensation. We agree that the Fund lacks standing to controvert the compensability of the claim for death benefits. But it does not follow that the Fund is, therefore, precluded from litigating any issue that was decided on the compensation claim. Well-established general principles of common law require that collateral estoppel or issue preclusion be applied only to a party who has had a full and fair opportunity to litigate the issue (see, e.g., Ryan v New York Tel. Co., 62 NY2d 494; Gramatan Home Investors Corp. v Lopez, 46 NY2d 481). For example, where a plaintiff succeeds in a negligence action against a single defendant, and the defendant thereafter commences an indemnity action over against a third party, the third party is not precluded from

litigating the issue of the defendant's negligence since the third party did not have an opportunity to litigate that issue in the primary action (see, Siegel, NY Prac § 155, at 197-198). The outcome of the subsequent litigation of that issue would, of course, have no effect on the defendant's liability to the plaintiff, as established in the primary action. A similar rationale is applicable here. If the Fund did not have the opportunity to be heard on the causal relationship issue in the proceeding on the claim for death benefits, it cannot be precluded from litigating that issue in the proceeding on the carrier's claim for reimbursement. The outcome of the litigation of that issue in the proceeding on the reimbursement claim would have no effect upon the compensability of the death benefit claim.

To bolster its conclusion that the Fund cannot litigate the issue of whether the October 1973 injury resulted in death since that issue is the same as the "primary issue" of causal relationship in the underlying compensation claim, the majority hypothesizes that one of the two alternative anomalous results will follow if the Fund is permitted to litigate that issue. The first of these anomalous results is that the Fund would have a right to reopen the claimant's case and contest the compensability of the claim. The authority to reopen a claim is a discretionary one vested in the Board, not the Fund (see, Matter of Sinacore v Dreier Structural Steel, 97 AD2d 659). Since we agree with the Board that the Fund lacks standing to controvert the compensability of the claim for death benefits herein, it would be an abuse of discretion for the Board to reopen the claim for that purpose. The alternative anomalous result posited is that the employer will be bound by the Board's award of compensation to claimant, but will then be at risk of losing reimbursement when the Fund subsequently establishes that the underlying claim was not compensable. In the proceeding on the carrier's claim for reimbursement, however, the issue is not whether the claim for death benefits was compensable; the issue is whether the statutory elements for reimbursement have been established (Workers' Compensation Law § 15 [8] [e]). The fact that one of those elements is substantially the same as one of the elements essential to the claim for death benefits does not convert the Fund's defense of the reimbursement claim into a challenge to the compensability of the underlying claim. The majority's apprehension appears to be based upon the possibility of inconsistent findings on essentially the same issue.

Under established principles of administrative law, however, a decision to reach a different result on essentially the same issue would have to be accompanied by an explanation with valid reasons *(Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516). There is nothing anomalous in denying reimbursement to the carrier in the event that valid reasons are found for concluding that the October 1973 injury did not result in death, despite the findings of causal relationship on the claim for death benefits, for in such a case the carrier is not entitled to reimbursement. The financial integrity of the Fund requires that it pay out on claims for reimbursement only when all of the elements of Workers' Compensation Law § 15 (8) (e) have been established in the proceeding on the carrier's claim for reimbursement, with the Fund having a full and fair opportunity to defend the claim pursuant to Workers' Compensation Law § 15 (8) (i).

As to the majority's concern that the primary purpose of Workers' Compensation Law § 15 (8) will be frustrated, we fail to see how employers will be discouraged from hiring the permanently handicapped by a ruling which provides the Fund with an opportunity to be heard on an issue that must be resolved in determining whether the carrier has established the statutory elements for reimbursement.

Finally, we note that in the case at bar, the Fund's representative was given notice of and participated in the hearing on the claim for death benefits, a procedure that normally would avoid inconsistent results. Apparently, it is not unusual for the death benefit claim and the reimbursement claim to be disposed of in a single proceeding *(see, Matter of Jamieson v Passarelli,* 15 AD2d 854; *see also, Matter of Smith v Bell Aerospace,* 125 AD2d 140). Nevertheless, the Board has ruled that the Fund cannot be heard on the issue of whether the October 1973 accident resulted in decedent's death since that issue is the same as the issue of causal relationship, a "primary issue" in the claim for death benefits. We are of the view that since the Fund is not seeking to controvert the compensability of the claim for death benefits, but only to be heard on an issue directly related to its liability for reimbursement, the Board's ruling is erroneous and should be reversed.

MAHONEY, P. J., and MERCURE, J., concur with LEVINE, J.; CASEY and WEISS, JJ., dissent and vote to reverse in an opinion by CASEY, J.

Decision affirmed, without costs.