# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 12
In the Matter of the Claim of
Estate of Norman Youngjohn,
     Appellant,
      v.
Berry Plastics Corporation
et al.,
     Respondents.
Workers' Compensation Board,
     Respondent.

Stephen A. Segar, for appellant.
Cory A. DeCresenza, for respondents Berry Plastics Corporation et al.

STEIN, J.:

Workers' Compensation Law § 15 (4) (d) limits recovery by a claimant's estate to "an amount not exceeding reasonable funeral expenses" when a claimant found entitled to permanent partial disability benefits dies of causes unrelated to the work injuries without a surviving spouse, child under the age of 18, or qualifying dependent. The question before us on this appeal is whether, in light of the legislature's 2009 amendments to the Workers'

- 1 -

Compensation Law permitting payment of schedule loss of use benefits through lump sum awards, a claimant's estate is entitled to recover the full value of a posthumous schedule loss of use award for a permanent partial disability despite the limitation set forth in section 15 (4) (d).  We conclude that section 15 (4) (d) can be given full effect in harmony with the 2009 amendments.  We, therefore, affirm the Appellate Division order holding that, here, recovery of the claimant's schedule loss of use award by his estate is limited to that portion of the award that "would have been due" to the claimant for the period prior to the claimant's death (Workers' Compensation Law § 33), plus "reasonable funeral expenses" (Workers' Compensation Law § 15 [4] [d]).

I.

In December 2014, decedent claimant Norman Youngjohn sustained injuries when he slipped on ice and fell in a parking lot at work while employed by Berry Plastics Corporation.  After decedent sought workers' compensation benefits, a claim was established for injuries to his right shoulder and left elbow, and he was awarded temporary benefits.  In September 2016, decedent notified the Workers' Compensation Board that his injuries had become permanent, and the workers' compensation insurance carrier (the Carrier) subsequently notified the Board that decedent's injuries were amenable to a schedule loss of use (SLU) award (*see generally* Workers' Compensation Law § 15 [3]).  However, in March 2017, before resolution of his claim for permanent partial disability benefits, decedent suffered a fatal heart attack unassociated with his work-related injuries.  At the time of his death, decedent had no surviving spouse, minor children, or other

qualifying dependents as defined by the applicable statutes (*see* Workers' Compensation Law §§ 15 [a]–[d]; 16).

Following decedent's death, the workers' compensation proceedings were continued through decedent's estate (the Estate). The Estate and the Carrier stipulated to a 55% schedule loss of use of decedent's left arm, a 45% SLU of his right arm, and 23 weeks of protracted healing. However, a dispute arose regarding whether the Estate was entitled to the full value of the SLU award or only the portion of the award up to the date of decedent's death, with the remainder of the award capped in accordance with Workers' Compensation Law § 15 (4) (d). The Estate argued that, in light of the legislature's 2009 amendments to the Workers' Compensation Law authorizing lump sum SLU awards (*see* L 2009, ch 351, §§ 1, 2; Workers' Compensation Law §§ 15 [3] [u], 25 [1] [b]), the entirety of decedent's award accrued at the time of decedent's accident or death. According to the Estate, the 2009 amendments effectively rendered Workers' Compensation Law § 15 (4) (d) inapplicable to SLU awards, and the full value of the award was therefore payable to the Estate.

A Workers' Compensation Law Judge determined, based upon the parties' stipulated SLU percentages, that decedent was entitled to 312 weeks of benefits, plus an additional 23.8 weeks due to a protracted healing period. The Workers' Compensation Law Judge directed that the total SLU award of $206,352.46, less payments already made, be paid to the Estate in a lump sum because "liability for the schedule loss of use accrued prior to the date of death." On its administrative appeal, the Carrier did not object to the lump sum method of payment but disputed the amount due, contending the Estate's

recovery was limited pursuant to Workers' Compensation Law § 15 (4) (d).  The Workers'

Compensation Board modified the Workers' Compensation Law Judge's decision,

determining that the SLU award payable to the Estate was limited solely to the amount of

the award capped at reasonable funeral expenses.

The Estate appealed.  The Appellate Division modified by reversing so much of the

Board's decision as limited the SLU award to reasonable funeral expenses, held that the

Estate was also entitled to payment of that portion of the SLU award that was due up to the

date of decedent's death, remitted the matter to the Board for calculation of the award, and

otherwise affirmed (169 AD3d 1237, 1239-1240 [3d Dept 2019]).  The Appellate Division

concluded that, while Workers' Compensation Law § 15 (4) (d) "restricted payment of

. . . the unaccrued portion of the SLU award" to reasonable funeral expenses, the Estate

was also owed—pursuant to Workers' Compensation Law § 33 and *Matter of Healey v*

*Carroll* (282 App Div 969 [1953])—that portion of the SLU award that would have been

periodically due between the date of the injury and the date of decedent's death (169 AD3d

at 1238-1239).  The Appellate Division rejected the Estate's argument that it was entitled

to the full value of the SLU award, reasoning that "the 2009 statutory amendments did not

alter the long-standing rule that, where an injured employee dies without leaving a . . .

[qualifying survivor], only that portion of the employee's SLU award that had accrued at

the time of the death is payable to the estate, along with reasonable funeral expenses" (*id.*

at 1239).  The Appellate Division also observed that the amendments did not otherwise

"alter the rate at which an SLU award accrues to an injured employee who is posthumously

awarded SLU benefits" (*id.*).

We granted the Estate leave to appeal (34 NY3d 903 [2019]), and now affirm.

II.

The Workers' Compensation Law "provides compensation for four different types of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability" (*Matter of LaCroix v Syracuse Exec. Air Serv., Inc.*, 8 NY3d 348, 353 [2007]; *see* Workers' Compensation Law § 15 [1]-[3], [5]).  In the case of permanent total disability, temporary total disability, or temporary partial disability, an employee is awarded compensation "during the continuance of the disability" based on a percentage of the employee's wages (*Matter of LaCroix*, 8 NY3d at 353; *see* Workers' Compensation Law § 15 [1], [2], [5]).  With respect to permanent partial disabilities, SLU awards are issued for such disabilities that involve a body part specifically enumerated in Workers' Compensation Law § 15 (a) through (t) (*see Matter of Mancini v Office of Children & Family Servs.*, 32 NY3d 521, 526 n [2018]).  SLU awards are based on a percentage of the employee's weekly wages but, unlike other types of compensation awards, the duration of the SLU award is determined by a statutory schedule assigning a fixed number of weeks of compensation specific to the particular body part that is injured (*see* Workers' Compensation Law § 15 [3]).[1]  An SLU award is intended to "compensate

---

[1] Permanent partial disabilities can also be "non-schedule" injuries to body parts not enumerated in the statute (*see* Workers' Compensation Law § 15 [3] [w]).  In non-schedule cases, the employee is entitled to a percentage "of the difference between the injured employee's average weekly wages and [such employee's] wage-earning capacity" after the injury for the "continuance of such permanent partial disability," subject to statutory durational caps (Workers' Compensation Law § 15 [3] [w]; *see Matter of Mancini v Office of Children & Family Servs.*, 32 NY3d 521, 526 [2018]).

for loss of earning power" caused by the permanent partial disability (*Matter of Marhoffer v Marhoffer*, 220 NY 543, 547 [1917]).

Various statutory provisions govern the dispensation of benefits following the death of a workers' compensation claimant, including, as relevant here, Workers' Compensation Law § 15 (4) (d) and § 33. Section 33—applicable to any type of compensation or benefits under the Workers' Compensation Law—provides that, generally, "[c]ompensation and benefits shall be paid only to employees or their dependents," except that "[a]n award for disability may be made after the death of the injured employee." In that regard, section 33 states that "any compensation" that was "due at the time of [the employee's] death" shall be payable to a surviving spouse, minor child, or certain dependents and, if there are none, then to the claimant's estate. Thus, "[i]f there are unpaid monies owed to the claimant for a period of time when [the claimant] was alive, such money is payable" in accordance with section 33 (Minkowitz, Practice Commentaries Workers' Compensation Law, Death; *see Matter of Sienko v Bopp & Morgenstern*, 248 NY 40, 42 [1928]). Section 33 applies regardless of whether the claimant's death is caused by the workplace injury, and it allows a qualifying survivor or the estate to recover "the amount of a disability award which has not been paid to the injured employee in [the employee's] lifetime" (*Matter of Sienko*, 248 NY at 45).

Workers' Compensation Law § 15 (4), the statutory provision at the crux of this appeal, is applicable upon a claimant's death when the claimant sought compensation for a permanent partial disability. That provision allows that "[a]n award for disability may be made after the death of the injured employee" but, unlike Workers' Compensation Law

§ 33, section 15 (4) applies only with respect to "[a]n award made to a claimant under subdivision three"—a permanent partial disability award—when the employee's "death aris[es] from causes other than the injury" (Workers' Compensation Law § 15 [4]).[2] Pursuant to section 15 (4) (a) through (c), in such scenarios, "[a]n award made to a claimant . . . shall . . . be payable to and for the benefit of" a surviving spouse or minor children. However, if no spouse or minor children survive the claimant, subdivision (d) provides that the award is payable to a qualifying dependent or, "if there be no such dependents, *then to the estate of such deceased in an amount not exceeding reasonable funeral expenses*" (emphasis added).[3]  In other words, under section 15 (4), when the workplace injury has not caused the claimant's death, payment of compensation "for this limited class of injury, permanent partial disability, may be continued" for the benefit of a surviving spouse, child, or dependent (*Matter of Sienko*, 248 NY at 45).  However, subdivision (d) of section 15 "provides for discontinuation of [an SLU] award upon the death of a claimant with no heirs (with the exception of reasonable funeral expenses)" (*Matter of LaCroix*, 8 NY3d at 355).

Here, the Estate does not dispute that, prior to 2009, Workers' Compensation Law § 15 (4) (d), where implicated, operated to limit an estate's recovery of an SLU award to reasonable funeral expenses, as well as that portion of the award that would have been

---

[2]  Workers' Compensation Law § 16, not implicated here, governs the payment of "death benefits" when the work-related injury causes the claimant's death (*see Matter of Keenholts v Bayer Co.*, 263 NY 77, 78 [1933]).

[3]  Regulations currently cap reimbursement for reasonable funeral expenses at either $10,500 or $12,500, depending upon the county (*see* 12 NYCRR 311.1; *see also* Workers' Compensation Law § 16 [1]).

periodically due prior to the claimant's death—as the Appellate Division held and consistent with *Matter of Healey* (282 App Div at 969-970).[4] However, the Estate contends that, by operation of certain 2009 amendments to other provisions of the Workers' Compensation Law, the entire SLU award now "accrues" before or at the time of the claimant's death and is, therefore, payable to the Estate under Workers' Compensation Law § 33.

### III.

To place the 2009 amendments in context, the Workers' Compensation Law historically provided for benefits, including SLU awards, to be paid periodically on a bi-weekly basis (*see Matter of LaCroix*, 8 NY3d at 354; Workers' Compensation Law § 25 [1] [b]), with lump sum awards issued only in particular cases when deemed advisable by the Board "in the interests of justice" (Workers' Compensation Law § 25 [5] [b]). In 2007, presented with the question of whether SLU awards could be paid as a lump sum as a matter of course, this Court held that the legislature's directive that payments be made periodically, as well as various components of other provisions of the Workers' Compensation Law, "preclude[d] a policy of lump-sum payment of [SLU] awards" (*Matter of LaCroix*, 8 NY3d at 351). In support of this conclusion, the Court pointed to other Workers' Compensation Law provisions containing language inconsistent with a lump sum payment scheme—namely, the direction in section 15 (3) (u) that two or more SLU awards

---

[4] The Carrier has never disputed that the Estate is entitled, under Workers' Compensation Law § 33, to that portion of the SLU award that would have been payable to decedent up to the date of his death (*see Matter of Healey v Carroll*, 282 App Div 969, 969-970 [1953]).

for permanent partial disabilities "run consecutively," the provision in section 15 (3) (v) that additional compensation may be available after termination of an SLU award, and—key to this appeal—section 15 (4) (d). Although we acknowledged that, unlike other disability compensation awards, SLU awards are "'independent of the time an employee actually loses from work'" (*Matter of LaCroix*, 8 NY3d at 356, quoting *Matter of Landgrebe v Westchester County*, 57 NY2d 1, 6 [1982]), we nevertheless ultimately held that "any departure from the method of periodic payment of [SLU] awards specified in the Workers' Compensation Law must come from the [l]egislature" (*id.* at 357).

Two years later, the legislature responded to our holding in *Matter of LaCroix* by amending the Workers' Compensation Law to expressly permit lump sum payments of SLU awards. Specifically, the legislature amended section 25 (1) (b) to provide that, although compensation shall otherwise generally be payable on a bi-weekly basis, "[a]n award of compensation payable for permanent partial disability under paragraphs a through t, inclusive, of subdivision [3] of section [15] of this article, shall be payable in one lump sum, without commutation to present value upon the request of the injured employee" (L 2009, ch 351 § 1). Consistent with that modification, the legislature also amended section 15 (3) (u) to provide that, for SLU awards involving multiple body parts, "the board shall award compensation for the loss or loss of use of each such member or part thereof, which awards shall be fully payable in one lump sum upon the request of the injured employee" (L 2009, ch 351 § 2). According to the legislature, these amendments would "allow injured workers to invest their award if they ch[o]ose and better prepare for the adverse financial

and emotional effects of their resulting diminished earning capacity" (Sponsor's Mem, Bill Jacket, L 2009, ch 351 at 5).

Significantly, the legislature did not amend Workers' Compensation Law § 15 (4) (d) which, as already noted, limits to reasonable funeral expenses an estate's recovery of the portion of an SLU award that would periodically become due after a decedent's death. The Estate nevertheless argues that the legislature's 2009 amendments authorizing lump sum payments for SLU awards render the full value of such an award payable to an estate even when a claimant has died without a surviving spouse, minor child, or qualifying dependent. In our view, this argument is foreclosed by the plain language of Workers' Compensation Law § 15 (4) (d), which remains in effect and which must be read together with the 2009 amendments.

## IV.

It is well settled that, "'[w]hen presented with a question of statutory interpretation, [a court's] primary consideration is to ascertain and give effect to the intention of the Legislature'" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 77–78 [2008], quoting *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006] [internal quotation marks and citation omitted]). "'As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'" (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 56 [2011], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Further, courts are "guided in [their] analysis by the familiar principle 'that a statute . . . must be construed as a whole and that its various sections must be considered

together and with reference to each other'" (*Town of Aurora v Village of E. Aurora*, 32 NY3d 366, 372 [2018], quoting *Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712, 721 [2012]; *see Matter of Mancini v Office of Children & Family Servs.*, 32 NY3d 521, 525 [2018]).  Courts should "give [a] statute a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions" (*Matter of Long v Adirondack Park Agency*, 76 NY2d 416, 420 [1990]).  As particularly relevant here, amendments should typically be construed together with the original act, with no part of the statute rendered inoperative "if they can all be made to stand and work together" (*Lyon v Manhattan Ry. Co.*, 142 NY 298, 303 [1894]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 192).  Further, in the absence of any evidence of a contrary legislative intent, provisions of a statute that are unchanged by an amendment are generally "continued in effect, with the same meaning" as prior to the amendment (McKinney's Cons Laws of NY, Book 1, Statutes § 193, Comment at 359).

The legislature's 2009 amendments to Workers' Compensation Law §§ 15 (3) (u) and 25 (1) (b)—which provide that SLU awards may be "payable" in a lump sum upon request of the injured employee (Workers' Compensation Law § 25 [1] [b])—changed the allowable methods of payment for SLU awards.  However, the Estate's contention that these amendments implicitly provide a claimant's estate a new entitlement to the value of an SLU award upon a claimant's death, or otherwise direct that an SLU award "accrues" at that time for purposes of an estate's recovery—issues that are distinct from the permissible methods of payment for such awards (*see Matter of LaCroix*, 8 NY3d at 357)—

cannot be reconciled with the fact that the legislature did not amend Workers' Compensation Law § 15 (4) (d) when it authorized lump sum payments. An estate's entitlement to an SLU award upon a claimant's death remains governed by Workers' Compensation Law § 15 (4) (d), which was left untouched by the 2009 amendments. As the Estate concedes, the plain language of that provision—both before and after the 2009 amendments—dictates that an award made "under subdivision three," including an SLU award, shall be "payable to" an estate only "in an amount not exceeding reasonable funeral expenses" (Workers' Compensation Law § 15 [4] [d]).

Inasmuch as Workers' Compensation Law § 15 (4) (d) can be harmonized with the 2009 amendments, that section must continue to be accorded this same effect today, despite the legislature's decision to permit lump sum payments upon the election of an injured claimant. That is, if a claimant so elects,[5] payment of an SLU award may be directed in a

---

[5] Although the Workers' Compensation Law Judge directed a lump sum payment of the award, the record does not otherwise indicate that decedent elected a particular method of payment for any future SLU award before he died. Notably, the Carrier did not argue at any point in the proceeding below that an estate may not elect a lump sum on behalf of a predeceased claimant. In fact, the Carrier indicated in its memorandum of law that a lump sum award was appropriate, disputing only the amount of the award. Thus, any question regarding whether such election by the Estate is permissible is unpreserved (*see Matter of Ruffino v Rosen & Sons*, 142 AD2d 177, 181 [3d Dept 1988], *affd* 74 NY2d 861 [1989]). Before this Court, the Carrier has chosen to dispute only whether the Estate is entitled to the value of the decedent's SLU award past the date of his death, not whether it can avoid paying the award in a lump sum fashion on the theory that the Estate, rather than decedent, made the election. Moreover, in light of our conclusion that Workers' Compensation Law § 15 (4) (d) operates to limit an estate's recovery, we have no need to otherwise determine whether an estate, surviving spouse, child, or dependent may elect a lump sum payment on behalf of a deceased claimant. Given these considerations, we decline our concurring colleague's invitation to decide a separate statutory argument against the Estate to which it has had no opportunity to respond. Nor do we find it appropriate to invoke our rules governing post-argument submissions—which are aimed at ensuring the Court is apprised

lump sum fashion; however, in the event a claimant dies from causes unrelated to the work injury, any yet unpaid amounts that would have become periodically due after the claimant's death are "payable to and for the benefit of . . . the estate of such deceased in an amount not exceeding reasonable funeral expenses" (Workers' Compensation Law § 15 [4] [d]).[6]  Indeed, to accept the Estate's argument that the entire SLU award became "due" to the claimant at or prior to his death, would be to hold that the legislature implicitly rendered Workers' Compensation Law § 15 (4) (d) completely inapplicable to SLU awards, leaving that provision effectual—if at all—with respect only to non-schedule partial permanent disability awards.  Contrary to the contention of our concurring colleague, no such legislative intent can be discerned from either the text of section 15 (4) (d), the statutory language enacted in 2009, or the legislative history of the 2009 amendments.

Our conclusion that Workers' Compensation Law § 15 (4) (d) should be interpreted in the same manner as it was before the 2009 amendments is further supported by the history of that provision.  In 1947, when the legislature enacted the particular language in section (15) (4) (d) that permits a claimant's estate to recover funeral expenses, the Workers' Compensation Board explained that, prior to that enactment, "[i]n schedule cases where there [we]re no dependents, no provision [wa]s made for payment of funeral

_____

of new developments in relevant facts or law (*see* 22 NYCRR 500.6), not encouraging the injection of new issues into a case at the final stage of its resolution.

[6] To be clear, this is in addition to the portion of the award previously paid or "due" to the claimant at the time of the claimant's death (i.e., the portion of the award calculated from the point of injury to the time of death) (Workers' Compensation Law § 33; *see Matter of Healey,* 282 App Div at 969-970), which neither party disputes before this Court.

expenses and the carrier receive[d] the entire benefit of the lapsed award" (Bill Jacket, L 1947, ch 746, Letter to Governor's Counsel from the Chair of the Workers' Compensation Board). Thus, section 15 (4) (d) was intended to provide *some* recovery to an estate where, previously, an estate had no entitlement to funeral expenses or any of the value of the SLU award remaining to be paid upon the death of a claimant. The legislature has unmistakably provided a claimant's estate with only a limited right to a discrete portion of the remaining SLU award upon the claimant's death if the claimant has no qualifying survivors. Here, the Estate cites no support for its position that the legislature, by authorizing lump sum payments, intended to alter, not only the methods of payment available, but also the amount of an SLU award that may be paid to an estate under those circumstances. Simply stated, we cannot countenance the Estate's suggestion that the legislature implicitly overhauled the provisions of section 15 (4) (d) governing distribution of SLU awards upon a claimant's death when it did not amend that section, particularly considering that we highlighted section 15 (4) (d) in *Matter of LaCroix*.

We also note that "the legislative history of a particular enactment must be reviewed in light of the existing decisional law which the [l]egislature is presumed to be familiar with and to the extent it left it unchanged, that it accepted" (*Matter of Knight-Ridder Broadcasting, v Greenberg*, 70 NY2d 151, 157 [1987]; *see Desrosiers v Perry Ellis Menswear, LLC*, 30 NY3d 488, 497 [2017]; *Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161, 169 [1985]). At the time the legislature amended the Workers' Compensation Law to permit lump sum SLU payments, decisional law—followed by the Board in a number of cases—had long interpreted Workers' Compensation Law § 15 (4)

(d) as limiting to reasonable funeral expenses an estate's recovery of that portion of an SLU award that encompassed schedule weeks post-dating the claimant's death (*see Matter of Healey,* 282 App Div at 970; *see e.g. Ruth Diamond Mkt. Research*, 2003 WL 21104752, at *1 [NY Work Comp Bd May 12, 2003]; *NYS Off. of Pks & Recreation*, 1998 WL 985496, at *1 [NY Work Comp Bd Dec. 14, 1998]).  More specifically, in *Matter of Healey*, the Appellate Division read Workers' Compensation Law § 15 (4) (d) and § 33 together in a factually analogous circumstance—a posthumous SLU award to a claimant who died of causes unrelated to the qualifying injury without leaving a spouse, minor child, or other dependent (282 App Div at 969).  There, the Appellate Division held that, while section 33 "preserves the award 'due' at the time of death," section 15 (4) (d) was intended to govern distribution of that part of the SLU award that encompassed the period after the claimant's death, and such portion "was to be absorbed and limited by the funeral expenses" (282 App Div at 970).  In the absence of an amendment to section 15 (4) (d) or any other indication that the legislature meant to alter its meaning, we cannot conclude that the legislature intended to change the longstanding interpretation given to section 15 (4) (d) and section 33 in this context.

The Estate asserts that the holding of *Matter of Healey* is tied to the periodic payment of SLU awards prior to the 2009 amendments, and appears to contend that, while Workers' Compensation Law § 15 (4) (d) has been rendered ineffective with regard to lump sum awards, it remains effective with regard to those SLU awards where a claimant elects to receive periodic payments.  Again, there is no textual basis in section 15 (4) (d), section 33, or the provisions amended in 2009, upon which such a distinction may be

drawn.  Nor may we judicially amend section 15 (4) (d) in the manner urged by the Estate because "[a] statute must be read and given effect as it is written by the [l]egislature, not as the court may think it should or would have been written if the [l]egislature had envisaged all the problems and complications which might arise" (*Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539, 548-549 [1983] [internal quotation marks and citation omitted]; *see Matter of Knight-Ridder Broadcasting, Inc.*, 70 NY2d at 157).

VI.

The Estate argues that Workers' Compensation Law § 15 (4) (d) operates to unfairly reduce the amount of an SLU award that may be available to the estate of a deceased claimant in an arbitrary fashion, contending that when a claimant dies from unrelated causes shortly after electing and receiving a lump sum payment, the entire value of the SLU award would pass to the claimant's estate.  By contrast, when, as here, a claimant dies from unrelated causes before the lump sum SLU award is entered or received, the estate may recover only reasonable funeral expenses and that portion of the SLU award that would have been due to the claimant before death.  The Estate maintains that this differential treatment is based solely on happenstance and serves no readily apparent legislative purpose.  The Carrier counters that application of Workers' Compensation Law § 15 (4) (d) in this context does not conflict with the purpose of the 2009 amendments, which the Carrier characterizes as intending to better compensate an injured employee for future loss in earning capacity by permitting an SLU award to be invested up front while the employee is alive.  Such contentions are better directed to the legislature for its consideration and resolution.  If the legislature intends for a claimant's estate to recover

the full value of an SLU award under the circumstances presented here, the Workers'

Compensation Law must be amended to so provide.  This Court, however, is bound to

reconcile the 2009 amendments with section 15 (4) (d), which can be achieved in such a

manner as to give full effect to the plain language of each statutory provision.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (concurring):

Claimant Norman Youngjohn passed away from a cause unrelated to his workplace injury during the pendency of his claim for permanent partial disability benefits. He is survived by two adult children, one of whom serves as the administrator of his estate (the Estate). I agree with the majority that the Estate is not entitled to a lump sum payment of the posthumous schedule loss of use (SLU) award issued to decedent pursuant to the

Workers' Compensation Law (WCL), but for different reasons than those stated by the majority, Appellate Division, and the Workers' Compensation Board (the Board).

In *Matter of LaCroix v Syracuse Executive Air Service, Inc.* (8 NY3d 348, 351 [2007]), the Court held that the WCL did not provide for a lump sum payment of a SLU award, even though the award accrued at the time of the injury. Instead, WCL § 25, which directs how compensation must be paid, provided that workers should receive awards periodically (*Matter of LaCroix*, 8 NY3d at 353-355). The Court reasoned, in part, that to read the law to allow lump sum payments would render WCL § 15 (4) (d), among other provisions, "substantially compromised in meaning and effect" (*id.* at 355). Specifically, since WCL § 15 (4) (d) "provides for discontinuation of a schedule loss of use award upon the death of a claimant with no heirs (with the exception of reasonable funeral expenses) if claimant dies from causes unrelated to the compensable injury," if claimants were entitled to receive lump sum awards, "cancellation of benefits upon death" under section 15 (4) (d) would have a "more limited application" than under a periodic payment system (*id.*).

The Court noted the competing policy arguments on the issue but left consideration (and resolution) of the matter to the legislature. On the one hand, there is the efficiency argument that an upfront payment could be spent by an injured employee who then turns to the state for support and thus "put[s] the community right back where it would have been if there had been no compensation system at all" (*id*. at 357 [internal quotation marks omitted]). The contrary view recognizes a claimant's personal agency over the award to which they are entitled and the claimant's ability to make informed decisions without government interference. The argument for this position is simple: A SLU award equates

to "a fixed award calculable upon injury," and thus "the state should not delay full payment over a period of years, effectively preventing a claimant from choosing how to invest these funds" (*id.*, citing Gelhorn and Lauer, *Administration of the New York Workmen's Compensation Law [Part II]*, 37 NYU L Rev 204, 229 [1962]).

The legislature subsequently amended WCL § 15 (3) (u) to provide that SLU awards "shall be fully payable in one lump sum *upon the request of the injured employee*" (*id.* [emphasis added]). WCL § 25 (1) (b) complements WCL § 15 (3) (u) and requires that SLU awards "be payable in one lump sum, without commutation to present value *upon the request of the injured employee*" (WCL § 25 [1] [b] [emphasis added]). These changes reflect the legislature's intent to "allow injured workers to invest their award if they choose and better prepare for the adverse financial and emotional effects of their resulting diminished earning capacity" (Sponsor's Memorandum, Bill Jacket L 2009 Ch 351 at 5). Accordingly, the lump sum option is a decision personal to the injured employee, exercised by making an affirmative request for a lump sum payment (*see* WCL §§ 15 [3] [u], 25 [1] [b]).

Given the clarity of the Court's analysis in *LaCroix*, we must assume that the legislature fully understood and anticipated the "limiting" effect that allowing lump sum awards would have on benefit discontinuance under WCL § 15 (4) (d) (Sponsor's Memorandum, Bill Jacket L 2009, ch 351 at 5 [noting that the amendments to the WCL were in direct response to this Court's holding in *LaCroix*]; *see also B & F Bldg. Corp. v Liebig*, 76 NY2d 689, 693 [1990] ["The Legislature is presumed to be aware of the law in existence at the time of an enactment"]; *Matter of Amorosi v South Colonie Ind. Cent. Sch.*

*Dist.*, 9 NY3d 367, 373 [2007]; *People ex rel. Postal Tel.-Cable Co. v State Bd. of Tax Commrs.*, 224 NY 167, 183 [1918] [The legislature is "charged with knowledge of the law"]). Accordingly, the WCL is properly interpreted as discontinuing future periodic payments upon the death of an injured employee who passes without a spouse, minor children, or dependents from causes unrelated to the compensable workplace injury (*see* WCL § 15 [4] [d]). The only exception is when the injured employee requests a lump sum award, in which case the award goes to the Estate, regardless of whether the award is posthumous (*see* WCL § 33). The application of WCL § 15 (4), which continues payment of the award to a deceased employee's surviving spouse, minor children, or dependents, remains unchanged.[1]

Here, the Estate failed to provide evidence that Mr. Youngjohn opted for a lump sum payment. The record does not contain a written, signed request from him, and there is no other evidence that, during his lifetime, he chose this preferred method of compensation. Thus, the Estate cannot demand payment in a lump sum as that decision is exclusively reserved for the injured employee. For that reason alone, the Estate's claim fails.[2]

---

[1] Notably, the legislature did not amend WCL § 25 (5) (b)—the basis for the Board's action in *LaCroix*. That section continues to authorize the Board to commute periodic payments to a lump sum "in the interests of justice" (*id.*).

[2] Unlike the majority, I perceive no obstacle to our consideration of whether the Estate may seek a lump sum payment of the entire award where Mr. Youngjohn made no such demand during his lifetime (majority op at 12 n 5). The Estate has, at all times, argued that it is entitled to the entire award because the law allows for lump sum payments. The relevant facts are undisputed. Thus, we are presented with a pure legal question of statutory interpretation and a threshold issue of the Estate's authority to demand a lump sum award (*Matter of Richardson v Fiedler Roofing*, 67 NY2d 246, 250 [1986], citing *Telaro v Telaro*, 25 NY2d 433, 439 [1969]; *American Sugar Ref. Co. of N.Y. v Waterfront Commn. of N.Y. Harbor*, 55 NY2d 11, 25 [1982] ["Threshold questions concerning the interpretation of

Order affirmed, with costs. Opinion by Judge Stein. Chief Judge DiFiore and Judges Fahey, Garcia and Wilson concur. Judge Rivera concurs in result in an opinion.


Decided April 1, 2021

---

(statutory) provisions . . . may be made to us not having been advanced below"]). Our consideration of that question is not foreclosed because the Carrier, the Board, and the Appellate Division assumed—erroneously in my view—that the Estate could assert a claim in its own right (*Persky v Bank of Am. Nat. N.A.*, 261 NY 212, 217-2-218 [1933], quoting *Oneida Bank v Ontario Bank,* 21 NY 490, 504 [1860] ["'It was the duty of the judges (below) to ascertain and declare the whole law upon the undisputed facts spread before them; and it is our duty now to give such a judgment as they ought to have given'"]).

My analysis is focused on the judicial task at hand and is not, as the majority claims, an "invitation" to decide an issue beyond our authority (majority op at 12 n 5). As I have discussed, the WCL mandates that the SLU award be distributed in scheduled installments *unless* a claimant affirmatively requests a lump sum payment. The Court may not ignore this statutory prerequisite because the Estate failed to carry its burden of showing that Mr. Youngjohn made such a request.

Of course, we could easily allay the majority's concerns about not affording the litigants an opportunity to be heard on this point by requesting post-argument briefing (*Misicki v Caradonna*, 12 NY3d 511, 526 n * [2009] [Smith, J., dissenting]; 22 NYCRR 500.7 [noting that the Court has the power to "specifically request[]" post-argument submissions]). Our ability to make such a request is not anomalous; a number of other courts, including the United States Supreme Court and other federal and state high courts, allow for post-argument briefing (*see e.g.* Sup Ct R 25.7 [providing that litigants appearing before the United States Supreme Court are permitted to file supplemental briefs after oral argument with leave from the Court]; *Randolph v United States*, 882 A2d 210, 226 [DC Cir 2005] [noting that the District of Columbia Circuit Court "has frequently requested post-argument briefing of issues not adequately raised by counsel"]; *In re Alleged Improper Practice Under Section XI, Paragraph A(d) of the Port Auth. Labor Relations Instruction*, 194 NJ 314, 329, 944 A2d 611, 621 [2008] [acknowledging the receipt and consideration of post-argument submissions]; Pa R A P 2501 [a] [allowing post-argument submissions upon the Pennsylvania Supreme Court's permission]). It is within our power to address the purely statutory threshold issue in the appeal before us. The majority's reasons for failing to do so are unpersuasive.